ERNIE JECZALA, Adm'r of the Estate of Andrew Hanton, Deceased, Plaintiff-Appellee, v. LINCOLN NATIONAL LIFE INSURANCE COMPANY, Defendant-Appellant.

Second District   No. 2—85—0426

Opinion filed September 4, 1986.

J. Robert Geiman, of Peterson, Ross, Schloerb & Seidel, of Chicago (David J. Novotny, of counsel), for appellant.

John R. Leitz, Jr., and Bogdan Martinovich, both of Ray & Glick, Ltd., of Libertyville, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Plaintiff, Ernie Jeczala as administrator for the estate of Andrew Hanton, brought a complaint for declaratory judgment in the circuit court of Lake County. In that complaint the plaintiff sought the court to declare that the defendant, Lincoln National Life Insurance Company, was obligated to pay full coverage under a group policy plan issued by defendant for the hospitalizations, medical expenses, and other expenses incurred by Hanton between July 6, 1982, and August 20, 1982. Subsequent to a hearing on the complaint, the trial court issued a written order finding in favor of defendant and against plaintiff. Plaintiff filed a post-judgment motion asking the court to vacate its final judgment order and enter judgment for plaintiff. In an amended order the court vacated its earlier judgment and found in plaintiff's favor. Defendant filed a timely notice of appeal.

In this court defendant raises four main contentions of error: (1) that the trial court erred in holding that section VI(M), the integration-with-Medicare provision, of the group insurance policy in question is ambiguous; (2) that the trial court erred in holding that defendant improperly applied the integration-with-Medicare provision; (3) that the trial court erred in finding that the provision violated public policy; and (4) that the trial court erred in calculating the amount of insurance benefits due to plaintiff.

Plaintiff, Ernie Jeczala, is the duly appointed administrator of the estate of Andrew Hanton, deceased. At the time of Hanton's death on August 20, 1982, Hanton was an employee of Glenkirk Association for Retarded Citizens (Glenkirk). A group insurance policy for the employees of Glenkirk, issued by the defendant, was in effect on August 20, 1982.

On or about July 6, 1982, Andrew Hanton was hospitalized at Condell Memorial Hospital and was subsequently transferred to Rush Presbyterian St. Luke's Hospital where he was treated for a heart attack until he was discharged on August 5, 1982. On August 11, 1982, Hanton became 65 years of age. On August 13, 1982, Hanton was re-

admitted to Rush Presbyterian St. Luke's Hospital where he underwent treatment until his death on August 20, 1982.

During his hospitalizations, Hanton incurred medical expenses totaling $29,672.68. Shortly after Hanton's death, his estate filed a claim for benefits with the defendant under the group insurance plan of Glenkirk. Defendant informed Hanton's estate that it would not extend full coverage to the deceased under the group insurance plan because Hanton had become eligible for Medicare coverage on August 1, 1982. Pursuant to a provision of the policy regarding integration with Medicare benefits, defendant claimed it was only obligated to pay $260.07 for any medical expenses occurring after August 1, 1982. The applicable provision of the policy stated:

"M. INTEGRATION WITH MEDICARE.

1. Any benefits payable under the medical expense insurance provisions of this policy will be reduced by the amount of any benefits or compensation to which the insured individual is entitled under Medicare. The reduction will apply whether or not the individual has received, or made application for, such other benefits.

2. An insured is deemed 'entitled' to all Medicare benefits for which he or she is or has been eligible."

Prior to his death on August 20, 1982, Andrew Hanton did contact the Social Security Administration to apply for benefits to which he was entitled under law. Due to his illness, he did not complete the processing of his application prior to his death. After his death, his estate made application with the Social Security Administration for retirement insurance benefits. The administration denied the application, stating that since the administration had not received, prior to Hanton's death, a written statement of intent to file an application for benefits, "no benefits can or will be paid as the application was not properly or timely filed." The estate sought a reconsideration of this denial. In its "Reconsideration Determination" the Social Security Administration determined that the estate's written application was untimely as it should have been filed within the six-month period following Hanton's telephone call in August 1982 to the administration. As the estate did not file the requisite written application until June 1983, one of the requirements for entitlement to retirement insurance benefits was not met and, therefore, no benefits were payable.

Subsequently, plaintiff brought an action for declaratory judgment (Ill. Rev. Stat. 1983, ch. 110, par. 2—701) asking the court to determine that, under the group insurance policy issued by defendant to

Glenkirk, defendant was obligated to provide coverage for Hanton's hospitalizations and medical expenses incurred between July 6, 1982, and August 20, 1982, and that the integration-with-Medicare provision of defendant's policy, upon which defendant based its refusal to extend full coverage to Hanton, was void as against public policy.

At an April 1, 1985, hearing on the declaratory judgment action, testimony by Ernie Jeczala established that Andrew Hanton was incapable of moving about by himself from the time of his discharge from the hospital on August 5 to his readmission on August 13 and subsequent demise on August 20. Timothy Gierke, an operations supervisor for the Social Security Administration who supervised claim representatives responsible for processing retirement and survivor insurance claims, testified for the defendant. Based on Gierke's experience and familiarity with Medicare, he opined that an individual who became 65 in August 1982 and who had made proper application for Medicare benefits would have begun receiving benefits on August 1, 1982.

Gerald Oljace, called as an expert witness for the defendant, reviewed the integration-with-Medicare clause of the insurance policy in question, stating that Medicare "carve out" provisions, such as the clause in question, were common in the insurance industry. On cross-examination Oljace stated that he had never seen a carve-out provision applied to an employee who did not receive benefits from another source.

Lisle Freinuth, a group-contract consultant with the defendant company, testified that the integration-with-Medicare clause was submitted to and approved by the Illinois Department of Insurance. Freinuth identified the department's stamp of approval on the letter defendant sent to the department at the time defendant sought approval of the clause in question as well as approval of several other provisions. Defendant's final witness, LaVera Hitzemann, a regional administrative consultant for defendant involved with the processing of claims, explained how the defendant, after estimating the payments Medicare would make, determined what amount, if any, was owed to plaintiff for the medical and hospital bills incurred by Hanton after August 1, 1982.

On April 8, 1985, the trial court entered judgment in favor of defendant, essentially finding that Hanton was eligible to receive Medicare benefits, that Hanton would have received such benefits had he made application for them or had his estate made application within six months of August 1982, and that the integration-with-Medicare provision did not violate public policy, was not vague or ambigu-

ous, and therefore was not applied unlawfully to plaintiff's claim so as to reduce the benefits payable to plaintiff.

Plaintiff filed a post-judgment motion seeking a reversal of the court's April 8, 1985, order. A hearing was held on the motion. No report of the proceeding was recorded. On April 30, 1985, the trial court entered an amended final judgment order finding, in essence, that the integration-with-Medicare provision was ambiguous and should therefore be strictly construed against defendant, the drafter of the policy, so as to preclude defendant from denying full coverage to plaintiff; that Hanton was incapable of filing a written application for Medicare benefits with the Social Security Administration prior to his death; and that, as a result, the estate was not entitled to apply for Medicare benefits after his death.

Additionally, the court entered judgment against the defendant and in favor of plaintiff in the amount of $24,856.28 for medical expenses. Defendant appeals.

Defendant first contends that the trial court erred in holding that section VI(M), the integration-with-Medicare provision, of the group insurance policy in question is ambiguous. Section VI(M), the provision in question, provides:

"1. Any benefits payable under the medical expense insurance provisions of this policy will be reduced by the amount of any benefits or compensation to which the insured individual is entitled under Medicare. The reduction will apply whether or not the individual has received, or made application for, such other benefits.

2. An insured is deemed 'entitled' to all Medicare benefits for which he or she is or has been eligible."

Defendant contends that the trial court erred in finding section VI(M) ambiguous, as the meaning of the provision is unmistakably clear, *i.e.*, that the insurance benefits to be paid to an insured will be reduced by the amount of Medicare benefits one is entitled to receive regardless of whether the insured applied for or received Medicare benefits. Plaintiff argues that defendant's insurance policy contains confusing and contradictory provisions regarding the policy's integration-with-Medicare provision, thereby creating ambiguities which must be construed in favor of the insured.

■■■ In interpreting the provisions of an insurance contract, the entire document should be examined, considering the language of the policy as well as the subject matter and purpose of the contract. (*Sawyer Fruit & Vegetable Co-Operative Corp. v. Lumbermens Mutual Casualty Co.* (1983), 117 Ill. App. 3d 407, 408-09, 453 N.E.2d

826.) Any ambiguity in an insurance policy, especially in provisions limiting an insurer's liability, will be construed against the insurer and in favor of the insured. (*Dobosz v. State Farm Fire & Casualty Co.* (1983), 120 Ill. App. 3d 674, 679-80, 458 N.E.2d 611.) However, contrary to plaintiff's contention, section VI(M) is not ambiguous, as the language of the provision is clear and does not conflict with and contradict other provisions of the policy. Additionally, the sentences within section VI(M) are not contradictory.

Section V of the policy, "Schedule of Benefits," states: "For individuals entitled to benefits under Medicare, section VI M will apply." The first sentence of section VI(M) provides that an insured's medical benefits under the policy will be reduced by the amount of benefits to which he is entitled under Medicare. The second sentence of the first paragraph of section VI(M) goes on to state that the reduction in policy benefits will apply *regardless* of whether the insured has received or made application for Medicare benefits. (Our emphasis.) Thus, even if an insured has not received or applied for Medicare benefits, the medical benefits provided under the insurance policy will be reduced by those Medicare benefits to which the insured is entitled. This second sentence makes the meaning of section (M) totally comprehensible, and, in our opinion, reasonable men could not disagree as to that meaning. To find that section VI(M) is ambiguous, as plaintiff contends, we would have to eliminate the second sentence of the first paragraph of the section from the contract. This we cannot do, as this court does not possess the authority to rewrite a contract into one to which the parties did not agree. (*UIDC Management, Inc. v. Sears Roebuck & Co.* (1986), 141 Ill. App. 3d 227, 230, 490 N.E.2d 164.) The insurance policy in question represents a contract between the parties involved. (*Copley v. Pekin Insurance Co.* (1986), 111 Ill. 2d 76, 85, 488 N.E.2d 1004.) Whoever negotiated the contract in the case at bar may not have anticipated the particular situation in question. Nevertheless, if a clause in an insurance contract is unambiguous, as we find this one is here, it must be applied as written. *Howalt v. Ohio Casualty Insurance Co.* (1986), 142 Ill. App. 3d 435, 440-41, 491 N.E.2d 1207.

Although the term "entitled" is defined in the second paragraph of section VI(M), plaintiff argues that it should be defined according to the definition provided within the Medicare regulations. Under that definition a person is not entitled to Medicare benefits unless he is eligible for them *and* has also applied for them. (See 20 C.F.R. sec. 404.303 (1982).) Accordingly, plaintiff argues that since the decedent did not apply for Medicare benefits, he could not be entitled to them and, thus, the second sentence and the first sentence in the first para-

graph of the section are in conflict. However, parties to a contract can agree to their own definitions of terms, as was done here by the inclusion of paragraph 2 in section VI(M). Moreover, nothing in the insurance contract provides that the terms from the contract should be defined according to the definitions appearing in the Medicare statutes. Consequently, we do not find any of the provisions of section VI(M) to be unclear, ambiguous, or conflicting.

■ Additionally, we find plaintiff's contention that the integration-with-Medicare clause is in conflict with section VI(G)(3)(a) of the insurance policy to be incorrect. Section VI(G)(3)(a) provides that benefits payable under the insurance policy should be reduced so that the sum of the reduced benefits and all benefits payable under all other plans will not exceed the total of allowable expenses incurred during any claim period with respect to individuals eligible for benefits under any other plan which has no similar provision. An individual is eligible for benefits under Medicare if he has met all requirements except application or enrollment. (42 C.F.R. sec. 408.3 (1985).) The deceased was eligible for Medicare benefits as he had attained age 65 and was entitled to monthly social security benefits. (See 42 C.F.R. sec. 408.10 (1985).) Since section VI(G)(3)(a) deals with the reduction of insurance benefits by the amount capable of being paid to an individual eligible for benefits under another plan, and since the decedent was eligible to receive benefits under Medicare, section VI(G)(3)(a) dealing with reduction of benefits is not, in our view, in conflict with section VI(M). Both provisions deal with the reduction of insurance benefits based on an individual's eligibility to benefits under another insurance plan. Furthermore, section VI(M) is a specific carve out for Medicare and is not reliant upon section VI(G)(3)(a) for interpretation.

■ As we find that no ambiguity exists in the insurance agreement, our only function is to construe the agreement as written. (*UDIC Management, Inc. v. Sears Roebuck & Co.* (1986), 141 Ill. App. 3d 227, 232-33, 490 N.E.2d 164.) Since section VI(M) provides that the deceased's insurance benefits will be reduced by the amount of benefits he would have been entitled to under Medicare, regardless of whether the decedent had received or applied for them, the defendant insurance company was correct in reducing the decedent's insurance benefits by the amount of Medicare benefits he would have been entitled to had he or his estate applied for those benefits. Accordingly, the trial court erred in determining that the defendant was responsible for the total medical and hospital expenses which Mr. Hanton incurred from August 1, 1982, until his death.

Because of our determination that the integration-with-Medicare

provision was unambiguous and must be enforced as written, we also hold that the trial court erred in finding that defendant improperly applied section VI(M) to deny plaintiff full coverage of his hospitalization expenses. Defendant had no choice here but to apply provision VI(M) as written.

Defendant contends that the trial court erred in finding that section VI(M), the integration-with-Medicare provision, violated public policy. It is not entirely clear why the defendant has raised this issue since, as the defendant itself points out in its brief, the trial court never made any specific finding in its amended final judgment order that section VI(M) was against public policy. Since no finding was made in this regard, there appears to be no reason why defendant has presented the public policy question as an issue on appeal, and we see no reason to address it.

Defendant also maintains that the trial court miscalculated the amount due to plaintiff for medical and hospital services rendered on or after August 1, 1982. As we have previously determined that defendant is not responsible for full coverage of medical and hospital expenses incurred by Hanton during this period, the trial court's insurance benefit award to plaintiff, based on defendant's responsibility for full coverage, is improper and must be reversed. Since testimony by defendant's witness, LaVera Hitzemann, established that defendant had made payments for medical and hospitalization expenses after estimating what portion of Hanton's submitted bills Medicare would not have paid, we assume defendant has fulfilled its coverage responsibilities. Nevertheless, we remand for the purpose of ascertaining whether this assumption is correct.

For the reasons set forth above, we reverse the judgment of the circuit court of Lake County, and remand solely for determining whether defendant has paid that portion of Hanton's medical and hospital bills for which it is obligated to provide coverage.

Reversed and remanded with directions.

LINDBERG and SCHNAKE, JJ., concur.