DEBRA SHELTON, Plaintiff-Appellant v. COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellee.
First District (2nd Division)   No. 86—2771

Opinion filed September 22, 1987.

Larry Karchmar, Ltd., of Chicago (Larry Karchmar, of counsel), for appellant.

John J. Foley, of John T. Burke & Associates, P.C., of Chicago, for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff-appellant Debra Shelton (Shelton) brought suit against defendant-appellee Country Mutual Insurance Company (Country Mutual) seeking a declaratory judgment that she was entitled to underinsured motorist benefits pursuant to the terms of an insurance policy issued by that company. Country Mutual filed a section 2—619 (Ill. Rev. Stat. 1985, ch. 110, par. 2—619) motion to dismiss, alleging that Shelton failed to comply with that provision of the policy requiring that any legal action against it be brought "within two years after the date of the accident." The circuit court granted the motion, and Shelton appealed. The only issue on review is whether Shelton's cause of action was barred by the two-year limitations provision.

A review of the record discloses that Shelton was injured in an automobile accident on July 31, 1983. The other driver's automobile insurance policy, underwritten by State Farm Insurance Company, had a liability maximum of $25,000, which that company paid on November 19, 1984. On January 21, 1985, Country Mutual received via certified mail a "Notice of Attorney's Lien" from Shelton's attorney asserting that she had hired him to prosecute her claim for underinsured motorist benefits, that she agreed to pay him one-third of any amount that might be recovered, and that he now claimed a lien therefor. The record indicates that no further course of action against Country Mutual was pursued on Shelton's claim for underinsured coverage. Consequently, on October 7, 1985, Country Mutual denied the claim "due to the fact that the two-year statute for demand for the same has passed."

Shelton thereafter filed the instant "Complaint for Declaratory Judgment," alleging that Country Mutual issued her an automobile insurance policy containing underinsured motorist benefits with a per person limit of $50,000, which she asserted covered the injuries she incurred as a result of her accident. Country Mutual then filed its section 2—619 motion to dismiss the action, alleging that Shelton failed to comply with the condition of the policy requiring the filing of a lawsuit within two years of the date of the accident. The circuit court granted the motion, and Shelton appealed.

The disputed underinsured motorist provisions of the insurance policy Country Mutual issued to Shelton read as follows:

"Agreement. ***

We will pay only after all liability bonds or policies have been exhausted by judgments or payments. [Hereinafter referred to as the exhaustion clause.]

* * *

Conditions. * * *

7. Legal Action Against Us. No suit, action or arbitration proceedings for recovery of any claim may be brought against us until the Insured has fully complied with all the terms of this policy. Further, any suit, action or arbitration will be barred unless commenced within two years after the date of the accident." (Hereinafter referred to as the limitations clause.)

Shelton raises five arguments in support of her contention that her action was not barred by the policy's two-year limitations period: (1) a contradiction or ambiguity existed between the limitations clause and the exhaustion clause, and therefore, in the absence of a specific provision governing when suit can be brought, the 10-year statute of limitations for actions upon written contracts should have applied; (2) by suing under the insurance policy, Shelton's complaint stated a cause of action in contract to which the contract statute of limitations applied; (3) under the "discovery rule," the two-year limitations period began to run on November 19, 1984, when a settlement was negotiated with State Farm; (4) the running of the two-year limitations period was tolled by the notice of attorney's lien received by Country Mutual on January 21, 1985, and did not begin to run again until Country Mutual denied the claim on October 7, 1985, giving Shelton until July 7, 1986, to file the suit; (5) Country Mutual waived the contractual limitations period and is accordingly estopped from asserting it.

■■ We first consider whether the 10-year statute of limitations for contract actions should have applied because of an alleged ambiguity in the Country Mutual policy. The law is clear that the language of an insurance policy, when uncertain, ambiguous, or subject to more than one interpretation, is to be construed in favor of the insured and most strongly against the insurer. (*Anderson v. Vrahnos* (1986), 149 Ill. App. 3d 251, 256, 500 N.E.2d 110; *State Farm Fire & Casualty Co. v. Moore* (1981), 103 Ill. App. 3d 250, 255, 430 N.E.2d 641.) When an insurance policy is ambiguous, the insured should be deemed covered. (*Z. R. L. Corp. v. Great Central Insurance Co.* (1987), 156 Ill. App. 3d 856, 859-60, 510 N.E.2d 102.) However, our supreme court has added that "[a]n insurance policy in which no ambiguity appears is to be read as any other contract, that is, according to the plain and ordinary meaning of its terms." (*Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 378, 400 N.E.2d 921.) Further, "[i]n interpreting the provisions of an insurance contract, the entire document should be examined, considering the language of the policy as

well as the subject matter and purpose of the contract." (*Jeczala v. Lincoln National Life Insurance Co.* (1986), 146 Ill. App. 3d 1043, 1047, 497 N.E.2d 514.) The law is also clear that in the absence of a specific and clear provision regarding the period within which uninsured motorist claims must be brought, the 10-year statute of limitations for contract actions must govern. *Murphy v. United States Fidelity & Guaranty Co.* (1983), 120 Ill. App. 3d 282, 286-87, 458 N.E.2d 54; *Hartford Accident & Indemnity v. Holada* (1970), 127 Ill. App. 2d 472, 480-81, 262 N.E.2d 359.

Shelton argues that "it is apparent when [considering the limitations clause and the exhaustion clause] and interpreting them together, the terms become ambiguous and contradict each other." The limitations clause expressly prohibits the insured from bringing any action against the insurer until all the terms of the policy are complied with. Shelton interprets such clause as imposing a term, or a "condition precedent," with which she had to comply before she was permitted to file suit against Country Mutual. Satisfying this condition precedent, Shelton's argument continues, conceivably could have taken longer than the two-year limitations period. She contends that the exhaustion clause, in effect, made it practically impossible for her to comply with the limitations clause. She concludes that these provisions are contradictory, and that this conflict must be construed strictly against Country Mutual, which drafted the agreement. Shelton adduces from such premises that there was no clear provision regarding the time within which suit must be brought, and therefore the 10-year statute of limitations for contract actions should have applied. Ill. Rev. Stat. 1985, ch. 110, par. 13—206.

In support of her contention that the exhaustion clause imposes a condition precedent to her filing suit, Shelton relies on the case of *Trust Co. v. Iroquois Auto Insurance Underwriters, Inc.* (1936), 285 Ill. App. 317, 2 N.E.2d 338. In *Iroquois*, the Trust Company brought an action as administrator for the deceased against Iroquois on a casualty insurance policy it had issued to Walter Roach, the third party. The policy provided:

> "No suit on this action on this policy or for the recovery of any claim hereunder shall be sustained in any court *** unless the Assured [Roach] shall have fully complied with all the foregoing requirements, nor unless commenced within twelve (12) months next after the happening of the loss ***. Nor unless the liability or loss shall have been actually sustained or paid in money by the Assured."

The court rejected Iroquois' argument that the suit was not "com-

menced within twelve months after the happening of the loss," as the policy stated, and instead found that the term "the loss" referred to the date that the loss was actually sustained by the insured by the rendering of an adverse judgment and not to the date of the accident.

■ Country Mutual first argues that the two provisions at issue herein do not conflict, since the exhaustion clause does not require her to take any action against her own insurer in order to perfect her claim. We agree. The exhaustion clause in no way conditions when a suit can be filed against Country Mutual, but instead qualifies only when it will pay a claim. In other words, the exhaustion clause establishes that the insurer agrees to pay the policyholder underinsured motorist benefits only after the third party's liability limits have been exhausted, but has no effect on when suit must be filed. Moreover, assuming *arguendo* that the exhaustion clause makes it impossible in some circumstances to comply with the limitations clause, this case clearly does not present one of those instances. At the time when all other liability bonds or policies were exhausted herein, approximately 8½ months remained on the two-year limitations period. Under these facts, it cannot be said that Shelton was harmed by any alleged contradiction between the two clauses.

Moreover, we believe that the issue in the *Iroquois* case was quite different from that posited here. As we have noted earlier, the question before the court there was whether the time within the meaning of the ambiguous term "happening of the loss" referred to the date of the accident or to the date the loss was actually sustained by the insured by the rendering of an adverse judgment. In the case at bar, however, there is no such ambiguity, since the policy issued to Shelton clearly states that the limitations period begins to run on the date of the accident.

■ Shelton next contends that the case *sub judice* presents strictly a contractual issue, since she merely sought to enforce her rights under an insurance contract. Therefore, her argument continues, the 10-year statute of limitations for actions upon written contracts must apply. According to Shelton, a policy provision, such as the two-year limitations herein, which dilutes or diminishes the statutory limitations period for contract actions is contrary to public policy. A review of the cases cited by the parties as applicable to this issue would be helpful at this point.

In contrast to other jurisdictions (see, *e.g., Brown v. Lumbermen's Mutual Casualty Co.* (1974), 285 N.C. 313, 204 S.E.2d 829), Illinois courts have indeed held that actions seeking to enforce the uninsured motorist provisions of an automobile insurance policy, though deriva-

tive of an underlying tort, are based on the insurance contract and that, therefore, in the absence of a provision governing when a suit thereon would have to be initiated, the contract limitations period governs. (*Murphy v. United States Fidelity & Guaranty Co.* (1983), 120 Ill. App. 3d 282, 287, 458 N.E.2d 54.) Numerous other cases have indicated that a suit predicated upon the uninsured motorist clause of an automobile insurance policy is a contract action. (*Burgo v. Illinois Farmers Insurance Co.* (1972), 8 Ill. App. 3d 259, 262, 290 N.E.2d 371; *Witkowski v. Covenant Security Insurance Co.* (1971), 1 Ill. App. 3d 1074, 1076-77, 275 N.E.2d 709; *Hartford Accident & Indemnity Co. v. Holada* (1970), 127 Ill. App. 2d 472, 480-81, 262 N.E.2d 359.) For example, in *Burgo*, two injured plaintiffs sued the Illinois Farmers Insurance Company under the uninsured motorist insurance provisions of a policy it had issued them in order to compel it to submit to arbitration of their damage claims. The trial court denied arbitration because a provision of the contract of insurance limited the period within which a demand for arbitration could be made to one year. The plaintiffs did not contest the fact that their demand for arbitration was made after the one-year period of the policy had expired, but instead argued that such a limitations was void as against public policy.

This court agreed, holding that had the uninsured motorist involved in the accident complied with the financial responsibility law (Ill. Rev. Stat. 1971, ch. 95½, par. 7—101 *et seq.*), the plaintiffs would have had two years to bring suit under the applicable statute of limitations for personal injury actions (Ill. Rev. Stat. 1971, ch. 83, par. 15). We reasoned that since the one-year limitations period contained in the policy of insurance violated the statute of limitations period, it was also in violation of the statute providing for uninsured motorist coverage since it served to deprive the insured of the coverage required by section 143a of the Illinois Insurance Code (Ill. Rev. Stat. 1969, ch. 73, par. 755a). Therefore, we held the limitations proviso of the contract to be void as against public policy. Since the time limitation imposed by the insurance policy was void, the provision was effectively, as in the *Murphy* case, without a time limit; accordingly, the 10-year statute of limitations pertaining to the enforcement of written contracts was applicable. (*Burgo v. Illinois Farmers Insurance Co.* (1972), 8 Ill. App. 3d 259, 263-64, 290 N.E.2d 371.) Thus, the *Burgo* court found that a one-year limitations period was unenforceable because it did not protect the accident victim to the same extent he would have been had the tortfeasor carried the required insurance coverage.

*Burgo,* however, was distinguished in *Coyne v. Country Mutual Insurance Co.* (1976), 39 Ill. App. 3d 279, 349 N.E.2d 485, where the court upheld a two-year limitations period set by the insurance policy for bringing suit against the insurance company for uninsured motorist benefits, reasoning that since the legislative intent in making uninsured motorist coverage mandatory was to guarantee that the accident victim be protected to the same extent as he would have been had the tortfeasor been insured, the two-year limitations period fixed by the policy gave the plaintiff the same amount of time he would have had to determine financial responsibility *vis-a-vis* an insured motorist. Similarly, in *Buchalo v. Country Mutual Insurance Co.* (1980), 83 Ill. App. 3d 1040, 404 N.E.2d 473, the court upheld the policy requirement of a written demand for arbitration within two years of the occurrence. (83 Ill. App. 3d 1040, 1047-48, 404 N.E.2d 473.) In a similar vein, the court in *Murphy* stated:

> "[i]f, within the framework of its contractual obligation, the defendant had desired to limit the time for making an arbitration demand to a period of two years after the accident, it could have inserted this condition into the parties' insurance contract. *** Such a limitation provision has been held to be valid and not against public policy, as it places the accident victim in at least as good a position as he would have been had the tortfeasor obtained the minimum insurance required by the Illinois Safety Responsibility Law." (*Murphy v. United States Fidelity & Guaranty Co.* (1983), 120 Ill. App. 3d 282, 287, 458 N.E.2d 54.)

In addition, several other cases have held that an insurance policy may require time limits within which actions on the policy may be initiated, even though they abbreviate limitations periods otherwise applicable by statute. *Rethy v. Country Mutual Insurance Co.* (1971), 132 Ill. App. 2d 897, 899, 271 N.E.2d 383; *Downing v. Wolverine Insurance Co.* (1965), 62 Ill. App. 2d 305, 311, 210 N.E.2d 603.

It may be argued that Country Mutual is not a tortfeasor, but a party to a contract, and therefore liable, if at all, in contract and not in tort, as all of the cases hold; consequently, the statute of limitations applicable to contract actions is the pertinent one in a suit brought to enforce the contract. It may also be argued that if the intent of the legislature in making uninsured motorist coverage mandatory was to place "the accident victim in at least as good a position as he would have been had the tortfeasor obtained the minimum insurance required by the Illinois Safety Responsibility Law," the General Assembly could, without any great effort, have said so by simply including

in the law a provision which would have permitted or mandated a limitations period equal to that of actions in tort to compensate for the obligation it was imposing on insurance companies. Hence, the argument continues, we cannot infer from the statute what the legislature refused to enact, especially since Shelton's action is predicated upon the underinsured and not on the uninsured provisions of the law, and, thus, the rationale afforded by the cases discussed above, which all involved uninsured coverage relating to the intent of the legislature as to the position in which it wanted to place the accident victim if he had obtained the required minimum policy coverage, is inapplicable in Shelton's case.

However, these arguments have only superficial appeal, for, at bottom, the rationale applied in the authorities we have cited above applies with equal force here. The cases cited herein all hold that, in circumstances similar to those found in the instant case, the rights of the insured can be no less than those he would have enjoyed against the tortfeasor. Clearly, the legislature has put the insurer in the boots of the tortfeasor, whether he be insured or underinsured; accordingly, the insured, in all fairness and justice, should not be conferred with rights any different from those inhering in the person whom the insured supplants. The fortuitous circumstance that the General Assembly obligates an insurer to offer certain benefits to its insured does not add to those rigors the inequitable requirement that it suffer a longer period of limitations than that which would have been applicable to the person whom it succeeds. Consequently, we hold that the limitations period of two years contained in the insurance policy does not violate public policy.

■ We now consider whether the trial court should have applied the "discovery rule" to the circumstances presented herein. Under the discovery rule, a "statutory limitation[s] period is computed from the time at which the plaintiff knew or should have known of the existence of the right to sue." (*Cundiff v. Unsicker* (1983), 118 Ill. App. 3d 268, 272, 454 N.E.2d 1089.) A plaintiff seeking to take advantage of the discovery rule "must plead that the cause of action remained unknown to [him]." (118 Ill. App. 3d 268, 272, 454 N.E.2d 1089.) In addition, our supreme court held that the discovery rule does not apply in cases where a reasonable time remains within the applicable statute of limitations period as of the alleged date of discovery. *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 323, 402 N.E.2d 560.

■ Relying heavily upon the case of *Coronet Insurance Co. v. Ferrill* (1985), 134 Ill. App. 3d 483, 481 N.E.2d 43, Shelton argues that it was only upon settling with State Farm on November 19,

1984, that she "discovered" her cause of action, and that it was at this time and this time alone that the limitations period began to run. However, she has failed to allege in her complaint that the cause of action remained unknown to her until that date. Moreover, Shelton indicated her knowledge of the fact that the other driver was underinsured by her demand letter to State Farm on September 17, 1984, approximately 10½ months before the two-year limitations period was to expire. Additionally, she actually settled with State Farm approximately 8½ months before the running of the two-year limitations period. Surely, Shelton had a reasonable time to bring suit within the limitations period. Presented with these facts, we are compelled to reject Shelton's "discovery rule" argument.

We also believe that the *Coronet* case is readily distinguishable from the instant case. In *Coronet*, the tortfeasor's insurance company became insolvent on April 20, 1982. The insured's policy provided that notice of an uninsured motorist claim based on the insolvency of the tortfeasor's insurer must be made within one year of the insolvency. On May 23, 1983, subsequent to the running of the one-year limitations period, the insured filed his claim. In response, the insurer filed a complaint seeking a declaration that the policy limitations period barred the claim. Affidavits were submitted by the insured and the insolvent insurer's liquidator stating that the insured did not receive notice of the insolvency until July 8, 1982. The trial court granted summary judgment in favor of the insured, and this court affirmed, holding that "the one-year notice period requirement would not begin to run until the claimant knew or reasonably should have known of the insolvency of the other motorist's insurer," drawing an analogy to the discovery rule. (134 Ill. App. 3d 483, 488, 481 N.E.2d 43.) Unlike the case at bar, however, the limitations period in *Coronet* began to run upon the happening of an event in which the insured was not involved, *i.e.*, the insolvency of the tortfeasor's insurer, whereas the limitations period at issue here began running on the date of the accident, an incident of which the insured must surely have been cognizant.

Shelton's next assertion is that the running of the two-year limitations period was tolled when Country Mutual received the notice of attorney's lien on January 21, 1985, relying on section 143.1 (Ill. Rev. Stat. 1985, ch. 73, par. 755.1), which states:

"Whenever any policy or contract for insurance, except life, accident and health, fidelity and surety and ocean marine policies, contains a provision limiting the period within which the insured may bring suit, the running of such period is tolled from

the date *proof of loss* is filed, in whatever form is required by the policy, until the date the claim is denied in whole or in part." (Emphasis added.)

By this argument, Shelton would have us persuaded that the notice of attorney's lien constituted sufficient proof of loss within the meaning of the statute and that, therefore, the limitations period was tolled and did not begin running again until Country Mutual denied the claim on October 7, 1985, giving Shelton until July 7, 1986, to file the suit.

In support of this argument, Shelton cites the case of *Dickman v. Country Mutual Insurance Co.* (1983), 120 Ill. App. 3d 470, 472-73, 458 N.E.2d 199, a case in which this court held that the insurer had a duty to affirm or deny coverage within a reasonable period of time after notification of the claim:

"[W]ith reference to all insurance companies, the Illinois legislature has declared certain acts to be improper claim practices if committed without just cause and either knowingly or with such frequency as to indicate a persistent tendency to engage in that type of conduct *** one of those acts is the failure to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed.

We believe that this provision evidences a strong legislative intent to impose a duty upon insurance companies to either affirm or deny coverage within a reasonable period of time after notification of a claim. This reasonable period of time would certainly fall well before the contractual limitations period had run. Therefore, we find that the defendant was under an obligation to deny plaintiff coverage prior to the running of the limitations period."

However, in the trial court, Shelton did not raise the argument that section 143.1 tolled the running of the limitations period, nor did she argue that the notice of attorney's lien constituted valid "notification of the claim" within the holding in *Dickman.* Obviously, Country Mutual was not afforded the opportunity to submit evidence or argument as to whether the notice of attorney's lien constituted valid "proof of loss" in the "form required by the policy." The law is clear that "an issue not presented to or considered by the trial court may not be raised for the first time on appeal and that points argued on review must be commensurate with the issues presented below." (*Melvin v. City of West Frankfurt* (1981), 93 Ill. App. 3d 425, 433, 417 N.E.2d 260; see also *Webb v. Rock* (1980), 80 Ill. App. 3d 891, 896, 400 N.E.2d 959.) Thus, the issue is not properly before this court; in

any event, we seriously doubt that there is any equation between a notice of attorney's lien and a "proof of loss," nor is there any showing that Country Mutual was obligated to react in any way to the notice of lien.

■ Finally, Shelton argues that Country Mutual waived the contractual limitations period and, therefore, is estopped from asserting it, owing to the fact that it allegedly engaged Shelton in settlement negotiations. It is true that courts have held that settlement negotiations toll the running of time limitations because the plaintiff cannot be lulled into a sense of security and thereafter be barred from proceeding with a lawsuit when the negotiations fail. (*Dickirson v. Pacific Mutual Life Insurance Co.* (1925), 319 Ill. 311, 318, 150 N.E. 256; *Suing v. Catton* (1970), 118 Ill. App. 2d 468, 473-74, 254 N.E.2d 806.) However, this court recently had occasion to address the waiver issue in a case in which there was nothing in the record to indicate that negotiations had taken place:

> "Because, in the present case, the record on appeal lacks a report of proceedings, the facts surrounding the waiver and estoppel issue contained in the statement of facts and in the argument section of the plaintiff's appellate brief lie outside the record and may not be considered on appeal." (*Davis v. Allstate Insurance Co.* (1986), 147 Ill. App. 3d 581, 585, 498 N.E.2d 246.)

The record in the instant case also utterly fails to disclose any evidence that would support Shelton's waiver and estoppel contention. There is no indication that any negotiations or discussions were held between Country Mutual and Shelton. Accordingly, Shelton's allegations lie outside the record and may not be considered on review.

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

STAMOS and HARTMAN, JJ., concur.