2025 IL App (1st) 241322

SECOND DIVISION
December 9, 2025

No. 1-24-1322

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| CARLOS GARCIA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | Appeal from |
| v. | ) | the Circuit Court |
| | ) | of Cook County |
| MIGUEL SANCHEZ-LOPEZ and AMERICAN FAMILY | ) | |
| MUTUAL INSURANCE COMPANY, | ) | 19L4774 |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Michael F. Otto, |
| | ) | Judge Presiding |
| (American Family Mutual Insurance Company, Defendant- | ) | |
| Appellee). | ) | |
| | ) | |

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Van Tine and Justice D.B. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    Nearly six years after a car accident in Illinois, Wisconsin resident Carlos E. Garcia filed a declaratory judgment action in Illinois against his insurer, American Family Mutual Insurance Company (American Family), seeking uninsured motorist (UM) coverage. A coverage suit is subject to Illinois's 10-year statute of limitations on contracts unless there is a specific and clear policy provision stating a different limitation period. *Shelton v. Country Mutual Insurance Co.*, 161 Ill. App. 3d 652, 656 (1987). The American Family policy stated that the insurer "may not be sued under the Uninsured Motorist Coverage on any claim that is barred by the tort statute of

limitations." Because of that statement, the circuit court granted the insurer's motion to dismiss the suit under section 2-619(5) of the Code of Civil Procedure, finding that it was time-barred regardless of whether it was governed by Illinois's two-year tort statute of limitations or Wisconsin's three-year tort statute of limitations. 735 ILCS 5/2-619(a)(5) (West 2018); 735 ILCS 5/13-202 (West 2014); Wis. Stat. Ann. § 893.54(1) (West 2016). Garcia appeals, arguing that the policy language is ambiguous about a suit that concerns contract rights rather than tort liability.

¶ 2     The accident occurred on March 23, 2015, at 6:04 a.m., while Garcia was operating an Illinois Department of Transportation snowplow in northwestern Cook County, in Leyden Township. He stopped the orange snowplow at a steady red light at the intersection of Grand Avenue and Edgington Street. Meanwhile, Miguel Angel Sanchez-Lopez was driving a borrowed minivan, even though his driver's license had been suspended more than a year earlier and he was not insured. He failed to stop the minivan before it collided with the center back of the snowplow and caused Garcia injuries. Sanchez-Lopez was arrested at the scene.

¶ 3     Garcia's policy with American Family included up to $500,000 in UM coverage. If Garcia was involved in an automobile accident, he was contractually required to notify his insurer as soon as "reasonably possible," describe what occurred, and name any injured persons and witnesses. On May 10, 2016, more than a year after the accident, Garcia's attorney sent a letter to American Family's office in Madison, Wisconsin, demanding "our client's uninsured/underinsured coverage" and asserting an attorney's lien. The letter provided Garcia's name and the date of the accident but no other details. Within the week, on May 16, 2016, American Family returned the correspondence, stating that it did not have enough information to match it with an American Family claim and requesting a claim number and/or policy number, "if available."

¶ 4 Garcia filed a one-count negligence suit in Cook County against Sanchez-Lopez and the minivan's owner, Maria Hernandez, on March 22, 2017. On April 2, 2019, he took a voluntary dismissal without prejudice to refiling within one year. See 735 ILCS 5/2-1009 (West 2018); *Morrison v. Wagner*, 191 Ill. 2d 162, 165 (2000) (section 2-1009 "confers on plaintiffs an unfettered right to voluntarily dismiss their claims without prejudice, upon proper notice and payment of costs, 'at any time before trial or hearing begins' ").

¶ 5 When he refiled the complaint May 1, 2019, Garcia named only Sanchez-Lopez. See 735 ILCS 5/13-217 (West 1994) (plaintiff may refile an action within one year of a voluntary dismissal); *Eighner v. Tiernan*, 2021 IL 126101, ¶ 21 (refiling an action pursuant to section 13-217 results in a new, distinct action with a new case number, a new filing fee, and a new summons to issue); see *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997) (holding 1995 amendments to section 13-217 unconstitutional).

¶ 6 On March 1, 2021, Garcia's attorney revised the date on his previous letter to American Family and mailed the new version. However, on March 5, 2021, American Family returned the letter, repeated that it lacked information, and again requested a claim and/or policy number.

¶ 7 On March 22, 2021, Garcia amended his complaint in order to add count II, in which he asked for a declaratory judgment concerning American Family's liability.

¶ 8 American Family denied Garcia's insurance claim on April 22, 2021, stating that counsel's letter in 2015 had been insufficient, the negligence claim against the uninsured driver was not filed within Illinois's two-year bodily injury statute of limitations and did not protect the insurer's subrogation rights, and the tortfeasor was the snowplow driver and was likely insured.

¶ 9 American Family filed a motion and then the amended motion at issue to dismiss count II

pursuant to section 2-619(a)(5). 735 ILCS 5/2-619(a)(5) (West 2018). After considering briefs, the judge who was assigned to the case at the time, Circuit Court Judge Daniel A. Trevino, granted the motion. Garcia was next granted an order of default against Sanchez-Lopez and, after prove-up hearings before Circuit Court Judges Anthony C. Swanagan and Michael F. Otto, he was granted a $300,000 judgment as to count I. This appeal followed from the final judgment order.

¶ 10     The circuit court's ruling on a section 2-619 motion to dismiss presents a question of law. *Freeburg Community Consolidated School District No. 70 v. Country Mutual Insurance Co.*, 2021 IL App (5th) 190098, ¶ 79. The interpretation of an insurance policy is also a question of law. *Murphy v. State Farm Mutual Automobile Insurance Co.*, 234 Ill. App. 3d 222, 225 (1992). We address these issues *de novo*. *Freeburg Community*, 2021 IL App (5th) 190098, ¶ 79.

¶ 11     When interpreting an automobile insurance policy, we are to effectuate the parties' intent at the time of contracting. *Murphy*, 234 Ill. App. 3d at 225. Policy terms that are clear and unambiguous are given their plain, popular, and ordinary meaning. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 119 (1992). By this we mean that "they will be construed with reference to the average, ordinary, normal, reasonable person." *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 393 (2005). A provision that is susceptible to more than one reasonable interpretation is ambiguous and will be construed strictly against the insurer and in favor of the insured. *Outboard Marine*, 154 Ill. 2d at 119. "[A]mbiguity is not limited to grammatical imprecision of the policy, for the particular factual setting of the insurance policy provides a framework for determining if the policy as executed is consistent with the intent of the parties." *Murphy*, 234 Ill. App. 3d at 225.

    "There are basically two reasons underlying the rules set forth above: (1) the insured's

intent in purchasing an insurance policy is to obtain coverage and therefore any ambiguity jeopardizing such coverage should be construed consistent with the insured's intent, [citation]; and (2) the insurer is the drafter of the policy and could have drafted the ambiguous provision clearly and specifically. [Citation.]" *Economy Fire & Casualty Co. v. Kubik*, 142 Ill. App. 3d 906, 909 (1986).

¶ 12 The "realit[y] of the transaction *** [is] that the provisions of an insurance policy are not [negotiated] between insurer and insured, but are written by the insurer and submitted for acceptance without change." *Miller v. Madison County Mutual Automobile Insurance Co.*, 46 Ill. App. 2d 413, 418 (1964).

¶ 13 Garcia contends that the dismissal of his complaint was in error because the policy's "Suit Against Us" clause does not clearly state a time period and this ambiguity is to be construed against American Family. He is referring to "Part VI – General Provision," paragraph 4 of the American Family policy, which states: "4. Suit Against Us. We may not be sued unless all the terms of this policy are complied with. We may not be sued under the Uninsured Motorist coverage on any claim that is time-barred by the tort statute of limitations."

¶ 14 The clause has not been addressed before in Illinois, but other jurisdictions that have considered the same or similar limiting language have found it to be ambiguous and unenforceable. The Ohio Supreme Court addressed similar language in *Lane v. Grange Mutual Cos.*, 543 N.E.2d 488, 489 (Ohio 1989), in which the insurer denied underinsured motorist (UIM) coverage because the insured did not file a claim within two years of her collision. The insurer's denial was based on the following policy language:

" 'No suit or action whatsoever or any proceeding instituted or processed in arbitration

shall be brought against the company for the recovery of any claim under this coverage * * * unless same is commenced within the time period allowed by the applicable statute of limitations for bodily injury or death actions in the state where the accident occurred.' " *Id.*

¶ 15　The Ohio clause is effectively the same clause that we are reviewing because " 'the applicable statute of limitations for bodily injury or death actions' " (*id.*) is another way to say "the tort statute of limitations."

¶ 16　The Ohio statute of limitations governing bodily injury provided that an action for bodily injury " 'shall be brought within two years after the cause thereof arose.' " *Id.* (quoting Ohio Rev. Code Ann. § 2305.10 (West 1988)).

¶ 17　The insured brought a declaratory judgment action to clarify her rights under the policy and initially prevailed on her argument that this language was ambiguous and unenforceable, lost when the insurer appealed to the intermediate appellate court, but again prevailed on her further appeal. *Id.* The Ohio Supreme Court found that the policy was not written in terms that clearly and unambiguously told the policyholder about the amount of time available to commence an action. For instance, a person lacking knowledge of the Ohio statutes would not know that, generally, an action for bodily injury must be commenced within two years. *Id.* A lay person would need an attorney to understand the limiting language, and an insured should not be required to retain counsel in order to avoid statute of limitations problems when a claim eventually arises. *Id.* at 490. Furthermore, even with legal advice, the timing was unclear because the policy did not specify whether the period began to run on the date of the accident, the date the insured discovered the tortfeasor's lack of insurance, or the date that the insurer denied that the claim was covered. *Id.*

The ambiguity was a "problem result[ing] from the insurance company's attempt to apply a statute of limitations designed for torts to limit the period for suit on a contract." *Id.* In addition, the use of the phrase "applicable statute of limitations" had the potential of encompassing not only the insured's direct claim for personal injuries but also the spouse's derivative claim for loss of consortium, and those two different tort claims would be subject to two different statutory limitations periods. *Id.* There was also a lack of clarity as to whether the contract incorporated statutory tolling periods when the plaintiff was a minor, of unsound mind, or imprisoned. *Id.* For these many reasons, the Ohio Supreme Court concluded that the policy language was unclear and ambiguous and could not shorten that jurisdiction's 15-year statute of limitations on contract actions. *Id.*

¶ 18    After the decision in *Lane*, Ohio's intermediate appellate courts addressed limitation clauses that unambiguously stated deadlines for filing suit. There was, for instance, *Abedi*, which involved an Ohio homeowner's policy that clearly and concisely informed the insured: " 'Suit Against Us. No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.' " *Abedi v. Motorists Insurance Cos. Mutual*, No. 93APE10-1435, at *1 (Ohio Ct. App. 1994) (nonprecedential unpublished opinion). The homeowner filed suit seeking coverage for a burglary that occurred on September 20, 1990. *Id.* "Clearly, one year from the date of loss was September 20, 1991," which meant that the homeowner's suit was not timely when it was filed on October 23, 1991. *Id.* Similarly, in *Davis*, an automobile policy's limitation clause unambiguously said that " '[a]ny legal action against [the insurer] must be brought within two years of the date of the accident [with the uninsured driver].' " *Davis v. Allstate Insurance Co.*, 2003-Ohio-4186, ¶ 2 (Ct. App.) (unpublished opinion). These two

cases and *Lane* shaped the resolution of *Triplett*, which involved an American Family automobile policy that included the same language that is at issue here:

> " 'Suit Against Us. We may not be sued unless all the terms of this policy are complied with. We may not be sued under the Liability coverage until the insured's obligation to pay is finally determined at the trial and appeal, if any, or by written agreement of the insured, the claimant and us. We may not be sued under the Uninsured Motorist coverage on any claim that is barred by the tort statute of limitations.
>
> Any action to recover under Uninsured Motorist coverage must be started within 2 years after the accident.' " *Triplett v. American Family Insurance Group*, 2003-Ohio-6660, ¶ 16 (Ct. App.) (unpublished opinion).

¶ 19 The coverage decision went in favor of the insurer, but not because of its equivocal sentence about the "tort statute of limitations."

> "In this case, the sentence 'we may not be sued under the Uninsured Motorists coverage on any claim that is barred by the tort statute of limitations,' echoes the language found ambiguous in *Lane.* However, the next sentence adds limiting language stating that 'any action to recover under the Uninsured Motorist coverage must be started within 2 years after the accident.' Thus, regardless of any statute of limitations, the contract imposes a two-year deadline for starting an action. Reading the provision as a whole, we conclude that the provision is clear and unambiguous ***." *Id.* ¶ 21.

¶ 20 The *Triplett* plaintiff also argued that the triggering event for the coverage dispute was a letter that he received from the insurer, not the accident itself. *Id.* ¶ 22. However, because the policy unambiguously mandated that his " 'coverage [action] must be started within 2 years after

the accident,' " there was a clear deadline regardless of any correspondence that he did or did not receive from the insurer. *Id.* ¶ 21. A similar argument was rejected in *Holloway*, where the policy stated: "Any action to recover under Uninsured Motorist coverage must be started within 2 years after the accident." *American Standard Insurance Company of Ohio v. Holloway*, 2007 Ohio 4714, ¶ 17 (Ct. App.) (unpublished opinion). The insurer filed a declaratory judgment action four years after the accident, and the trial court later ruled that one of the alleged tortfeasors was an uninsured driver. *Id.* ¶¶ 6, 19. The claimants then argued that the driver was not actually uninsured until the trial court ruled that she was uninsured. *Id.* ¶ 26. The court disagreed, holding that the claims "for uninsured motorist coverage are barred by the policy's two-year limitation period on the bringing of such actions." *Id.* ¶ 28. The clarity in the Ohio clause made for an uncomplicated analysis.

¶ 21　　Thus, Ohio courts have considered an insurer's statement about a specific number of years to be an effective and clear way to communicate a limitation period and have rejected the "problem result[ing] from [an] insurance company's attempt to apply a statute of limitations designed for torts to limit the period for suit on a contract." *Lane*, 543 N.E.2d at 490.

¶ 22　　Similar policy language was also litigated in Iowa's highest court and found to be ambiguous. The policy at issue in *Hamm v. Allied Mutual Insurance Co.*, 612 N.W.2d 775, 783 (Iowa 2000) stated:

> " 'We will pay only after an "insured's" rights to the proceeds of all liability insurance bonds or policies have been determined by judgment or settlement agreement.
>
> ....
>
> SUIT AGAINST US
>
> We may not be sued unless all the terms of this policy are complied with.

We may not be sued under the Underinsured Motorist coverage on any claim that is barred by the tort statute of limitations.' " *Id.*

¶ 23 The Iowa tort statute of limitations for personal injuries was two years. *Id.* at 778 (citing Iowa Code § 614.1(2) (1995)).

¶ 24 According to the Iowa Supreme Court, the statement that "[the insurer] may not be sued under the [UIM] coverage on any claim that is barred by the tort statute of limitations" neither clearly articulated a limitations period nor the event upon which the limitations period would begin to run. *Id.* at 784. Therefore, the language did not preempt Iowa's 10-year statute of limitations for the insureds to bring a breach of contract action about UIM benefits. *Id.* The limitation would begin to run according to the general rule in contract actions that the statute of limitations commences when the contract is breached, meaning that the 10-year period started when the insurer denied the request for underinsured benefits. *Id.*

¶ 25 The Iowa Supreme Court recognized that its ruling about a UIM clause was inconsistent with its decisions in *Morgan* and *Douglass* in which it held that similar policy language about UM coverage meant that the limitations period for UM actions was shortened to two years and began on the date that the accident occurred. *Id.*; *Morgan v. American Family Mutual Insurance Co.*, 534 N.W.2d 92, 98 (Iowa 1995); *Douglass v. American Family Mutual Insurance Co.*, 508 N.W.2d 665, 666 (Iowa 1993). The Iowa Supreme Court acknowledged that its earlier assessment of the policy language was wrong, and it expressly overruled its mistakes. *Hamm*, 612 N.W.2d at 784. The policies at issue in *Morgan* and *Douglass* were American Family policies that contained the same language that appeared in Garcia's policy: " 'We may not be sued under the Uninsured Motorist coverage on any claim that is barred by the tort statute of limitations.' " *Morgan*, 534

N.W.2d at 98; *Douglass*, 508 N.W.2d at 666.

¶ 26    In contrast to the reasoning of the supreme courts of Ohio and Iowa, in *Napier*, an intermediate appellate court in Indiana approved of the "tort statute of limitations" language at issue and found the insured's suit concerning her UM coverage from American Family was time-barred. *Napier v. American Family Mutual Insurance Co., S.I.*, 179 N.E.3d 504 (Ind. Ct. App. 2021). The insured was seeking coverage for two accidents that occurred about five years earlier. *Id.* at 506-07. Like Garcia's policy with American Family, "Part VI – General Provision," paragraph 4 of Napier's contract with American Family stated: " '*Suit Against Us.* [American Family] may not be sued unless all the terms of this policy are complied with. *** [American Family] may not be sued under the Uninsured Motorist coverage on any claim that is barred by the tort statute of limitations.' " *Id.* at 507. American Family prevailed in the trial court on its argument that the language required the insured to file within Indiana's two-year limitation on personal injury and personal property suits (*id.* (citing Ind. Code Ann. § 34-11-2-4(a) (West 2020))), rather than Indiana's 6- or 10-year statutory limitations for contract actions. *Id.* (citing Ind. Code Ann. §§ 34-11-2-9, 34-11-2-11 (West 2020)). On appeal, she contended that the "tort statute of limitations" was ambiguous because Indiana had a number of different statutes of limitations that applied to tort claims, depending upon the types of damages that were involved. The appellate court disagreed, finding that the contract's reference to "tort statute of limitations" was "specifically applicable" to UM coverage and thus unambiguously referred to Indiana's two-year statute of limitations for personal injury claims.

¶ 27    American Family urges us to follow the Indiana decision and contends that Garcia is trying to "evade the long line of Illinois authority validating contractual limitation clauses."

¶ 28    The cases cited above were decided in other jurisdictions and, therefore, are not binding on this court. See *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381, 395 (2005). Nevertheless, "comparable court decisions of other jurisdictions 'are persuasive authority and entitled to respect.' " *Id.* (quoting *In re Marriage of Raski*, 64 Ill. App. 3d 629, 633 (1978)).

¶ 29    The Indiana intermediate court's decision in *Napier*, however, lacks the depth of analysis performed by the Ohio and Iowa supreme courts in *Lane* and *Hamm*, and we are not persuaded by its abrupt conclusion.

¶ 30    The Indiana court seems to have also disregarded the well-established principles that insurance policy terms are to be read from the perspective of an ordinary person of average intelligence and that any doubts or ambiguities are to be construed most strongly against the insurer. *Gillen*, 215 Ill. 2d at 393 (insurance policies "will be construed with reference to the average, ordinary, normal, reasonable person"); *Canadian Radium & Uranium Corp. v. Indemnity Insurance Co. of North America*, 411 Ill. 325, 334 (1952) (rejecting a distinction between " 'accidental injuries' " and " 'accidental means' " because "[c]ourts should not adopt gossamer distinctions which the average [person] for whom the policy is written cannot possibly be expected to understand."); *Lane*, 543 N.E.2d at 489 ("an insurance policy must be written in terms that are clear and unambiguous to the policyholder"); *National Surety Corp. v. Westlake Investments, LLC*, 880 N.W.2d 724, 734 (Iowa 2016) ("We determine the ordinary meaning of the words in an insurance policy from the standpoint of a reasonable ordinary person, not from the standpoint of a specialist or an expert."); *Allgood v. Meridian Security Insurance Co.*, 836 N.E.2d 243, 246-47 (Ind. 2005) (" 'Policy terms are interpreted from the perspective of an ordinary policyholder of average intelligence,' and if reasonably intelligent persons may honestly differ as to the meaning

of the policy language, the policy is ambiguous." (quoting *Burkett v. American Family Insurance Group*, 737 N.E.2d 447, 452 (Ind. Ct. App. 2000))); Restatement of the Law of Liability Insurance § 4 (2019) (individual consumers ordinarily are not expected to be aware of specialized meanings). "Interpretation of statutes of limitations can be difficult," and Garcia should not have needed to obtain legal advice in order to understand what American Family intended when it incorporated a "tort statute of limitations" into its insurance contract. *Lane*, 543 N.E.2d at 489. We doubt that the policy language would be readily understood by "the average, ordinary, normal, reasonable person" (*Gillen*, 215 Ill. 2d 393) who lacks legal experience. The language does not specify a period of time, such as one or two years, or a triggering event, such as an accident. It requires familiarity with the length of a "tort statute of limitations" but does not identify a tort statute by name or number, does not indicate whether to consult the laws where the policyholder resides and purchased the coverage or where an accident occurs, and neither disclaims nor adopts customary tolling events such as minority. There are unfamiliar terms and many unstated factors affecting when the time to bring a declaratory judgment action would begin to run or be tolled. Ambiguity occurs when "the language of the contract is 'obscure in meaning through indefiniteness of expression' " (*Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004) (quoting *Platt v. Gateway International Motorsports Corp.*, 351 Ill. App. 3d 326, 330 (2004))), particularly when the policy is to be written for comprehension by an ordinary person. American Family's indefinite language is not easily understood by the average, unassisted lay person.

¶ 31     Tellingly, every Illinois case that American Family cites addressed a contract clause that specified a number of years and a triggering event (typically "within two years of the accident"), just like the Ohio and Iowa cases discussed above that contrasted clear contracts with the American

Family contract. See *Coyne v. Country Mutual Insurance Co.*, 39 Ill. App. 3d 279, 279 (1976) ("The insurance contract also provided that a suit seeking recovery under the policy's uninsured motorist provisions must be filed within two years of the accident."); *Buchalo v. Country Mutual Insurance Co.*, 83 Ill. App. 3d 1040, 1042 (1980) (" 'No suit, action or arbitration proceedings for the recovery of any claim under this Section shall be sustainable in any court of law or equity unless the insured shall have fully complied with all of terms of this policy, nor unless commenced within two (2) years after the occurrence of the loss.' "); *Shelton*, 161 Ill. App. 3d at 655 (" 'Legal Action Against Us. No suit, action or arbitration proceedings for recovery of any claim may be brought against us until the Insured has fully complied with all the terms of this policy. Further, any suit, action or arbitration will be barred unless commenced within two years after the date of the accident.' "); *Hannigan v. Country Mutual Insurance Co.*, 264 Ill. App. 3d 336, 337-38 (1994) (" 'No suit, action or arbitration proceeding for recovery of any claim may be brought against us until the insured has fully complied with all terms of this policy. Further, any suit, action or arbitration will be barred unless commenced within two years after the date of the accident. Arbitration proceedings will not commence until we receive your written demand for arbitration.' "); *Hermanson v. Country Mutual Insurance Co.*, 267 Ill. App. 3d 1031, 1033 (1994) (" 'Legal Action Against Us. No suit, action or arbitration proceedings for recovery of any claim may be brought against us until the insured has fully complied with all the terms of this policy. Further, any suit, action or arbitration will be barred unless commenced within two years after the date of the accident.' "); *Vansickle v. Country Mutual Insurance Co.*, 272 Ill. App. 3d 841, 842 (1995) (" '*Legal Action Against Us.* No suit, action or arbitration proceedings for recovery of any claim may be brought against *us* until the *insured* has fully complied with all the terms of this

policy. Further, any suit, action or arbitration will be barred unless commenced within two years after the date of the accident. Arbitration proceedings will not commence until *we* receive *your* written demand for arbitration.' " (Emphases in original.)); *Zerjal v. Daech & Bauer Construction, Inc.*, 405 Ill. App. 3d 907, 914 (2010) ("The relevant provision is in paragraph 11 and states, '[A]ny legal action must be brought within two (2) years from the date of the [home] inspection.' "); *Country Preferred Insurance Co. v. Whitehead*, 2012 IL 113365, ¶ 5 (" 'Legal Action Against Us. No suit, action or arbitration proceedings for recovery of any claim may be brought against us until the insured has fully complied with all the terms of this policy. Further, any suit, action or arbitration will be barred unless commenced within two years from the date of the accident.' ").

¶ 32    If American Family wanted language to this effect, it could have put the same wording into its policy. Most of the Illinois decisions that the insurer cites were filed between 1976 and 1995, one was filed in 2010, and the other was filed in 2012; the Ohio Supreme Court filed *Lane* in 1989 (*Lane*, 543 N.E.2d 488), and the Iowa Supreme Court filed *Hamm* in 2000 (*Hamm*, 612 N.W.2d 775). Garcia's American Family coverage did not take effect until January 1, 2015. American Family had years to study these cases and amend its policy form accordingly before it contracted with Garcia.

¶ 33    In our opinion, Garcia's appeal is supported by the weight of the Ohio and Iowa authority and what we consider to be the better reasoned decisions, and American Family has no real support for its reading of the policy.

¶ 34    Accordingly, we conclude that Garcia's complaint was erroneously dismissed as time-barred when it was timely filed within the 10-year statute of limitations applicable to coverage suits. See *Shelton*, 161 Ill. App. 3d at 656. We reverse the dismissal of count II.

1-24-1322

¶ 35     Reversed.

*Garcia v. Sanchez-Lopez*, **2025 IL App (1st) 241322**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-4774; the Hon. Michael F. Otto, Judge, presiding. |
| **Attorneys for Appellant:** | Timothy P. Rhatigan, of Chicago, and Lynn D. Dowd, of Naperville, for appellant. |
| **Attorneys for Appellee:** | Michael L. Rice, of Croke, Fairchild, Duarte & Beres, of Chicago, for appellee. |