NANCY LORD *et al.*, d/b/a Nancy Lord Realty, Plaintiffs-Appellees, *v.* ROBERT MELTON *et al.*, Defendants-Appellants.

Third District   No. 79-24

Opinion filed January 24, 1980.

Dana R. McReynolds, of Kewanee, for appellants.

Dennis A. DePorter, of Braud, Warner, Neppl & Westensee, Ltd., of Rock Island, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Colony Realty, Inc., appeals from a judgment of the Circuit Court of Henry County entered in a bench trial, by the terms of which the trial court found that defendants Robert Melton and Dixie

Melton were not obligated to plaintiffs Nancy Lord and Nancy Ingels, d/b/a Nancy Lord Realty, but finding that Colony Realty, Inc., was obligated in the sum of $2,100 for half of a disputed commission arising from the sale of property owned by the Meltons.

The record discloses that the Meltons were the owners of a residence and 40 agricultural acres in Henry County, which they desired to sell for a price of $140,000. The Meltons were on friendly terms with a number of real estate brokers in and about the town of Galva, and, apparently, wishing to remain on friendly terms, gave several of the local brokers an opportunity to represent the Meltons in the sale of the property but maintain only an open listing basis without granting any exclusive right to any broker. It was noted in the comment, *Symposium: Brokers' Commissions in Illinois*, 41 Chicago-Kent L. Rev. 40, 55 (1964), "Where the open listing is used, the broker is employed to bring about whatever transaction his principal [the seller] has contemplated, but there is nothing in the agency relationship which precludes the principal from bringing about the same transaction himself or from hiring other brokers to do so." (See also *Hunt v. Judd* (1922), 225 Ill. App. 395.) By reason of the open listing to which we have referred, none of the brokers which were contacted had an exclusive right to the sale of the property for the Meltons, to the exclusion of any other broker.

On Wednesday, November 10, 1976, Robert Melton talked with Mike Clucas of Colony Realty, Inc., advising of the Meltons' desire to sell the property. On Friday, November 12, 1976, Melton also called Richard Carlson of Nancy Lord Realty and conveyed a similar message. On Saturday, November 13, 1976, Mr. Carlson and Mrs. Nancy Lord went to the Melton residence and examined the property. Carlson carried with him an exclusive agency agreement form, but the Meltons refused to sign that form or any other agreement and orally consented only to an open listing. Later that day, Carlson went to the home of John and Sarah Moriarity and told the Moriaritys about the Melton property. The following Tuesday, on November 16, Carlson showed the Melton property to his uncle, Ray Carlson. The next day, Wednesday, November 17, Carlson showed the Melton property to Mr. and Mrs. Moriarity. That showing took about 45 minutes.

On the following Thursday, November 18, John Moriarity came to the office of Colony Realty in response to an advertisement which Colony had placed in the newspaper. The ad did not refer to the specific location of the property or the name of the seller. When Moriarity was advised that the property about which he inquired was the Melton property, Moriarity told Clucas of Colony Realty that he had just viewed the property with Carlson, and that he was interested in purchasing the property, but that he had two problems. The first was that he did not

want to deal with Nancy Lord Realty, having had previous unsatisfactory dealings with Mrs. Lord.

The second stated reason was that he feared the imposition of a very large tax liability should his wife sell some Douglas County property which she had inherited.

Clucas told Moriarity that he might be able to avoid taxation by effecting an exchange of his wife's Douglas County property for that of the Meltons and offered to consult with the tax experts known to Clucas on this matter. Clucas then contacted two accountants. Ultimately, a deal was arranged whereby the Moriaritys' tenant, John Albin, would purchase the Melton property. Albin would then trade the Melton property for the Douglas County property owned by the Moriaritys. Thus, Albin would become the owner of the Douglas County property which he had previously rented from the Moriaritys, and the Moriaritys would become the owners of the Melton property. The Meltons would also receive the $140,000 asking price through this arrangement.

On Saturday, November 20, the Meltons agreed to sell to Albin. The following day, November 21, Carlson called Moriarity. Moriarity told Carlson that he didn't want the Melton property. On Tuesday, November 23, an agreement was drafted providing for the sale of the Melton property to John Albin. This agreement was signed the following day. The property was deeded to John Albin on January 6, 1977. On January 13, 1977, John Albin deeded this property to Sarah Sue Moriarity.

The customary commission for the sale of this type of property by Galva, Illinois, brokers is 3%. As the selling price was $140,000, the commission on this sale was $4,200. The Meltons paid that amount to Colony Realty, Inc. Apparently, after they discovered that this sale was made, Nancy Lord and Nancy Ingels, d/b/a Nancy Lord Realty, demanded this commission for themselves. When the Meltons refused to pay Nancy Lord Realty a commission, Nancy Lord and Nancy Ingels, d/b/a Nancy Lord Realty, instituted the action with which we are concerned as against both the Meltons and Colony Realty, Inc. As we have noted, the case was tried by the judge in a bench trial, in which the judge found in favor of the Meltons but against Colony Realty, Inc., for the sum of $2,100, or one-half of the disputed commission. The issue before us on appeal, therefore, is whether Nancy Lord Realty is entitled to half of the commission or whether Colony Realty, Inc., is entitled to the entire commission in this situation.

■■ The basis for the claim asserted by Nancy Lord Realty as against Colony Realty is that Colony tortiously interfered with a contractual relationship between Nancy Lord Realty and the Meltons. The tort of inducing the breach of a contract has long been recognized in Illinois. Intentional and unjustified inducement of breach of another's contract

could result in liability. The elements of the cause of action involve a valid contract, defendant's knowledge of the existence of the contract, defendant's intentional and malicious inducement of the breach of contract, and an actual breach of such contract caused by defendant's wrongful conduct with resultant damage to the plaintiff.

To support the claim asserted in this action, Nancy Lord Realty argues that there existed a contract between Nancy Lord Realty and the Meltons. Their brief implies that this was a bilateral contract: that the Meltons had promised to pay a commission upon the sale of the property, and that Nancy Lord Realty promised to make an effort to find a buyer. The facts in the instant case, however, show that the Meltons agreed only to pay the broker who brought them a buyer who was ready, willing and able to buy the premises at the price desired by the Meltons. Nancy Lord Realty did not bring the Meltons a buyer. Colony Realty actually brought the buyer who was ready, willing and able to pay $140,000 to the Meltons. ■■ Under the open listing, no contract actually would exist between the Meltons and Nancy Lord Realty or between the Meltons and Colony Realty, until a buyer was actually obtained by Colony Realty in the instant case. If Nancy Lord Realty, being contacted only with respect to an open listing, had failed to use its best efforts to find a buyer, under the open listing arrangement, there would certainly be no liability to the Meltons for failure of effort by Nancy Lord Realty on the theory of an existing bilateral contract. The evidence in the case indicated clearly that the Meltons offered to pay a commission to a broker who actually brought the Meltons a buyer at the price the Meltons desired. The type of arrangement involved was one which the broker could only accept and which would become a binding contract through performance by the broker. There was no failure on the part of Nancy Lord Realty to fulfill or perform under the contract by reason of meddling of Colony, since Moriarity at no time was ready, willing or able to proceed with the purchase of the premises through Nancy Lord Realty, under the facts in the instant case. (*Cf. Cebulak v. Cwerenz* (1977), 46 Ill. App. 3d 376, 361 N.E.2d 4; *Hilton Realty, Inc. v. Caserta* (1977), 49 Ill. App. 3d 433, 364 N.E.2d 448.) Clearly, on the basis of the record, no binding contract was ever formed between the Meltons and the Nancy Lord partnership, nor was any such contract interfered with by Colony Realty. In the instant case, it is not the Meltons who failed to perform, but the Nancy Lord partners themselves who were unable to find a customer ready, willing and able to purchase the Melton property.

There was also no showing of malice on the part of Colony Realty. While Clucas testified that he delighted in being able to take a customer away from Nancy Lord Realty, because the Nancy Lord firm had previously done the same to Colony Realty, this does not establish legal

malice, or lack of justification on the part of Colony to complete the transaction in the instant case. In the cause before us, the purchaser plainly stated he did not wish to deal with Nancy Lord. Colony Realty then proceeded to act in the sellers' best interest in not turning away a potential sale by the Meltons which Colony was able to bring about and which Nancy Lord Realty could not, on the basis of the record.

While the assertion by Nancy Lord Realty of tortious interference with its business relations is a novel theory in the setting of this case, the determination which we are making is consistent with well-established law governing the right to a commission of real estate brokers employed under open listing agreements.

It is a long-established rule in this and other States that before a real estate broker can recover for commissions earned under an open listing, he must show that he has either sold the property in question, been instrumental in bringing about the sale, or that he procured a purchaser who was ready, willing and able to purchase at the stipulated terms. Brokers are not entitled to commissions for unsuccessful efforts. (*Camp v. Hollis* (1947), 332 Ill. App. 60, 66, 74 N.E.2d 31.) With the type of open listing involved in the instant case, Nancy Lord Realty did not bring about the sale or procure a purchaser who was ready, willing and able to purchase at the stipulated terms.

■■ Unless an owner of property particularly agrees not to do so, the owner may employ two or more brokers, and in such case, it is the broker who is the efficient cause of the sale who is entitled to the commission. This right is not affected by the circumstance that such broker sells to one whose attention to the property had been originally directed by another broker. With an open listing, commission is payable not to the broker who first speaks of the property to a prospect, but to the broker who is the procuring cause of the sale, whether he is the first or second to engage the attention of a purchaser. *Chicago Title & Trust Co. v. Guild* (1944), 323 Ill. App. 608, 614-15, 56 N.E.2d 659; *McGuire v. Carlson* (1895), 61 Ill. App. 295, 299.

Where there is an intervening effective agency, such as successful negotiations by another broker, in an open listing situation, it follows that a broker would not be entitled to a commission merely because of his initial introduction of the property to a purchaser. (*Moehling v. Brickman* (1968), 98 Ill. App. 2d 156, 163, 240 N.E.2d 210.) The fact that the broker may have influenced a purchaser to some extent does not entitle the broker to a commission. Such influence, if exerted by several brokers, would not entitle each of them to a commission. The only broker who would be so entitled would be the one who effected the sale, or through whose efforts the sale was brought about. (*White v. Sellmyer* (1910), 157 Ill. App. 435.) In the instant case, the Nancy Lord agency was not the

efficient, proximate, procuring cause of the sale. (*Burns v. Sullivan* (1915), 192 Ill. App. 127.) The intervening instrumentality of Mike Clucas of Colony Realty, Inc., was the procuring cause, and, as such, was entitled to the commission on the sale involved in the instant case. The Moriaritys were unable, unwilling, and not ready to purchase the Melton property on the terms offered to them by Nancy Lord. John Moriarity contacted Colony Realty in response to an ad for an anonymous piece of property. Mike Clucas of Colony Realty was able, as a result of diligence and imaginative effort, to propose a deal among three parties, to which the Moriaritys then became ready, willing and able to respond favorably. Such effort included consultation with two accountants. As the agency which brought together the parties upon terms which all parties agreed upon, Colony Realty clearly earned the commission for this sale.

For the reasons stated, therefore, the portion of the judgment appealed from, granting $2,100 in damages and costs to the plaintiffs as against Colony Realty is hereby reversed.

Reversed.

STENGEL and BARRY, JJ., concur.