UIDC MANAGEMENT, INC., *et al.*, Plaintiffs-Appellants, v. SEARS ROEBUCK AND COMPANY, Defendant-Appellee.

First District (4th Division)   No. 85—2315

Opinion filed February 27, 1986.

Wildman, Harrold, Allen & Dixon, of Chicago (Peter H. Fritts, H. Roderic Heard, Joan M. Fencik, and Cal R. Burnton, of counsel), for appellants.

Arnstein, Gluck, Lehr, Barron & Milligan, of Chicago (Arthur L. Klein, Michael A. Stiegel, and John T. Wagener, of counsel), for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

This is a contract action between the plaintiffs, UIDC Management, Urban Investment and Development Company, La Salle National Bank, Urban/JMB Partnership and JMB Chicago Centers (collectively referred to as UIDC) and the defendant Sears Roebuck and Company (Sears). UIDC filed a declaratory judgment action seeking a declaration as to who is to perform the exterior maintenance of the areas adjoining the Sears parcel in the shopping center known as Orland Square. UIDC contends that the contract with Sears gives UIDC the right and obligation to perform that maintenance. Sears filed a motion to dismiss the complaint for failure to state a cause of action alleging that the terms of the agreement were unambiguous and that the contract allowed Sears, rather than UIDC, to perform the exterior maintenance. The trial court granted Sears' motion. UIDC now appeals.

In 1976, UIDC and Sears, along with other major retailers such as Marshall Field and J.C. Penney, worked together in forming the Orland Square shopping mall. Each of these participants owns the land upon which its store and parking area are built. UIDC owns the remaining areas of the mall, including other retail, parking and landscaped areas. All participants entered into an easement and operating agreement (agreement) which sought to coordinate the efforts of all parties and delineate the rights and responsibilities among them. The matters covered by the agreement relate to advertising, landscaping, management and maintenance of the shopping center. For nine years, from July 1976 until December 1984, UIDC maintained all the exterior common areas of the shopping center, which include the sidewalks, parking areas, roads and landscaped areas located on Sears' parcel in addition to the common areas located on Sears' parcel. During this period Sears reimbursed UIDC for Sears' *pro rata* share of the maintenance costs.

In December 1984, Sears informed UIDC that Sears would be performing the exterior maintenance of its parcel. UIDC objected, and after unsuccessful negotiation attempts filed this declaratory judgment action. UIDC argued below and argues on appeal that the agreement is ambiguous with respect to who is to perform the exterior maintenance. As a basis for its position, UIDC relies upon the terms of the agreement, in addition to the custom and practice between the parties, and the alleged industry understanding that the term "manage" includes, or is synonymous with, the right to "maintain" the exterior of

the Sears parcel. Moreover, UIDC argues that the ambiguity should have been resolved by a jury rather than by the court. On Sears' motion to dismiss, the trial court held that the agreement was not ambiguous. In addition, the court construed the agreement to mean that Sears had the right under the agreement to perform its own exterior maintenance.

■ The primary object in the construction of a contract is to give effect to the intention of the parties. (*Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 283, 154 N.E.2d 683; 4 Williston, Contracts sec. 601, at 303-09 (3d ed. 1961).) The court does not have the authority to rewrite the contract into one which the parties did not enter into. (*Sigma Delta Tau Society v. Alongi* (1976), 44 Ill. App. 3d 650, 652, 358 N.E.2d 906; 4 Williston, Contracts sec. 610A, at 513 (3d ed. 1961).) A contract is ambiguous when its terms are reasonably capable of interpretation in more than one way. (*Wilson v. Illinois Benedictine College* (1983), 112 Ill. App. 3d 932, 937, 445 N.E.2d 901.) However, the mere fact that the parties do not agree upon the meaning of the contract terms does not create an ambiguity. *Board of Education v. Chicago Teachers Union* (1980), 89 Ill. App. 3d 861, 866, 412 N.E.2d 587.

■ The question of whether a contract is ambiguous is a question of law to be determined by the court. (*Lenzi v. Morkin* (1983), 116 Ill. App. 3d 1014, 1015-16, 452 N.E.2d 667.) Courts may permit the admission of extrinsic evidence provisionally for the purpose of determining whether an ambiguity exists. (*Keep Productions, Inc. v. Arlington Park Towers Hotel Corp.* (1977), 49 Ill. App. 3d 258, 263, 364 N.E.2d 939; *Baird & Warner, Inc. v. Ruud* (1977), 45 Ill. App. 3d 223, 229, 359 N.E.2d 745; 4 Williston, Contracts sec. 601, at 311 (3d ed. 1961); 3 Corbin, Contracts sec. 579, at 421-22 (1960); J. Calamari & J. Perillo, Contracts sec. 3—9, at 117 (2d ed. 1977).) If an ambiguity appears, then the interpretation of the contract is a question of fact; if no ambiguity is present, then its interpretation is a question of law and the words of the contract must be given their ordinary meaning. *URS Corp. v. Ash* (1981), 101 Ill. App. 3d 229, 235, 427 N.E.2d 1295; *Chicago Investment Corp. v. Dolins* (1981), 93 Ill. App. 3d 971, 974, 418 N.E.2d 59; *Sol K. Graff & Sons v. Leopold* (1981), 92 Ill. App. 3d 769, 771, 416 N.E.2d 275.

To demonstrate the existence of an ambiguity in this case, UIDC relies upon various provisions of the agreement in addition to an affidavit by Robert W. Powell, Jr., senior vice-president of UIDC Management and an agreement between UIDC and J.C. Penney. UIDC cites provisions in the agreement which are allegedly necessary to effectu-

ate the goal, as set forth in the preamble to the agreement, of developing a unified and coordinated retail sales area. These provisions relate to the appearance of the shopping mall, retail hours, central management and the standard of maintenance. In support of its position, UIDC also points to articles I and VI of the agreement. Article VI states that "the management of the shopping center shall be performed by [UIDC]." The term "shopping center" is then defined in article I to include the common areas located on Sears' parcel, and the term "common areas" is defined to include "areas within the shopping center, but outside the building structures, which shall be open to the public general," including the parking and landscaped areas and sidewalks. UIDC contends that these provisions, when considered together and in light of the parties' past practices and the alleged industry definition of the term "manage," show that the contract is susceptible to more than one interpretation and that this question of interpretation should be left for the jury. Moreover, UIDC asserts that the proper interpretation of the agreement is that UIDC has the right and obligation to perform the exterior maintenance of the Sears parcel.

In determining whether the provisions cited by UIDC reveal the existence of an ambiguity, this court must construe the agreement as a whole. (*State Farm Mutual Automobile Insurance Co. v. Schmitt* (1981), 94 Ill. App. 3d 1062, 1063, 419 N.E.2d 601.) In doing so, we note that there are other provisions in the agreement which specifically relate to the question of maintenance. For example, article IX provides that:

> "Field, Sears and Penney covenant and agree that each shall keep and maintain in good order, condition and repair their respective Stores and the Site Improvements located in their respective Properties ***."

The term "Site Improvements" is then defined in article I to include all roadways, walkways, parking areas, landscaping and all other types of structures and improvements intended for common use. More importantly, the agreement distinctly addresses the issue of maintenance in article XI, which is entitled "Maintenance and Lighting." This provision provides in subsection A that:

> "*** Sears covenants as to Sears' property *** as follows:
>
> > (1) to keep and maintain all buildings and improvements on its respective Property including, but without limitation, all utility lines, common areas and other common facilities, at all times, and a clean, unlittered, safe, orderly and sanitary condition.
> >
> > (2) to remove promptly, to the extent reasonably practical,

snow, ice and surface waters.

(3) to keep all marking and directional signs in the Common Areas distinct and legible.

(4) to repair, replace and renew lighting in the Common Areas as may be necessary.

(5) to care for and replant when necessary, all landscaped areas. Any replanting shall substantially conform to the original landscape design or such other design as shall be agreed upon by the parties hereto."

Additionally, subsection B of article XI provides a remedy for noncompliance with subsection A. If the maintenance standard of subsection A is not met, then, after giving notice, a party shall have the right to enter upon the property of the party to whom notice was given and correct or repair the condition. The party on whose property the remedial maintenance was performed shall then pay the costs thereof.

In addition to relying upon the terms of the contract to show an ambiguity, the plaintiff also submitted the affidavit of Robert W. Powell, Jr., senior vice-president of UIDC Management. In this affidavit, Powell states that throughout the shopping center industry the terms "manage" and "management" are generally understood to encompass the idea of maintenance of the physical condition of the shopping center. In addition, Powell states that the function of the manager is to maintain the condition of the physical assets, and that in this context, the term "manage" is synonymous with the term "maintain."

■ We do not believe that Powell's affidavit demonstrates the existence of an ambiguity. The affidavit merely contains bare statements without any specific support. Further, the assertions set forth in the affidavit are simply the opinion of UIDC as to the definition of the term "manage." As stated before, the fact that the parties have divergent views on the meaning of a term does not create an ambiguity.

■ In further support of its position, the plaintiff submitted an agreement between Sears and J.C. Penney. This agreement between Sears and J.C. Penney, however, is not relevant to the determination of the intent of the agreement between Sears and UIDC, as Sears was not a party to the Penney agreement. Consequently, we believe that neither the provisions cited by the plaintiff nor the extrinsic evidence submitted reveal the presence of an ambiguity in the agreement. Accordingly, having found no ambiguity, the only function left for this court is to construe the agreement as written. *United Farm Bureau Mutual Insurance v. Elder* (1980), 89 Ill. App. 3d 918, 921, 412 N.E.2d 630, *rev'd on other grounds* (1981), 86 Ill. 2d 339, 427 N.E.2d 127; Restatement (Second) of Contracts sec. 212, comment d (1981); 4 Willis-

ton, Contracts sec. 601, at 311 (3d ed. 1961).

◼ As written, article XI of this agreement states that Sears covenants to "maintain" the specified areas. Although UIDC has often asserted that the term has an alternate meaning within the industry, UIDC has not provided this court with any factual support for such an interpretation. Thus, in light of the ordinary meaning of the word "maintain," we believe that Sears is responsible for the exterior maintenance of its parcel.

◼ The second issue raised by the plaintiffs is whether the trial court erred in not allowing the plaintiff to amend its complaint in order to raise the issues of waiver or estoppel. The decision whether to allow a plaintiff to amend the complaint lies within the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of that discretion. (*Farnor v. Irmco Corp.* (1979), 73 Ill. App. 3d 851, 858, 392 N.E.2d 591.) The trial court's discretion to allow an amendment should be freely exercised in order that litigants may fully present their cause of action. (*Giannini v. First National Bank of Des Plaines* (1985), 136 Ill. App. 3d 971, 988.) The standard to be applied is whether the trial court's denial of the request to amend furthers the ends of justice. *Schenker v. Chicago Title & Trust Co.* (1984), 128 Ill. App. 3d 488, 491, 470 N.E.2d 1264.

◼ In this case, we believe that the trial court's decision denying the plaintiff's request to amend its complaint does not further the ends of justice and was in error. Although the plaintiff has no automatic right to amend its complaint, this is not a case where UIDC has repeatedly attempted to do so. Moreover, in view of the fact that UIDC alleges that for nine years it was allowed to perform the exterior maintenance on the Sears parcel it appears that the legal theories of estoppel and waiver may provide the plaintiff with a viable cause of action. Accordingly, the plaintiff should be given an opportunity to fully present these theories.

For the foregoing reasons, the judgment of the circuit court of Cook County finding that the contract is unambiguous and the court's construction that Sears has the right to perform its own maintenance is affirmed. The denial of the request to amend the complaint to present theories of estoppel and waiver is reversed. Accordingly, this cause is remanded for further proceedings in accordance with this decision.

Affirmed in part and reversed in part and remanded.

LINN, P.J., and McMORROW, J., concur.