**GRUBB & ELLIS COMPANY, a
Delaware Corporation,
Plaintiff–Appellee,**

v.

**BRADLEY REAL ESTATE TRUST, a
Massachusetts business trust,
Defendant–Appellant.**

Nos. 89–3187, 89–3454.

United States Court of Appeals,
Seventh Circuit.

Argued June 11, 1990.
Decided Aug. 9, 1990.

Benjamin J. Randall, Marjorie E. Schaffner, Timothy F. Kocian, Katz, Randall & Weinberg, Chicago, Ill., for plaintiff-appellee.

George M. Covington, Deborah H. Bornstein, Todd G. Frank, Michael Padden, Gardner, Carton & Douglas, Chicago, Ill., for defendant-appellant.

Before CUDAHY, FLAUM and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

Bradley Real Estate Trust ("Bradley") hired Grubb & Ellis, a real estate broker, to act as its agent for the sale of a downtown Chicago building; the agency agreement between the two parties provided, with some exceptions, that Grubb & Ellis would

receive a commission upon the sale of the building during the term of the agency. The choice of brokers appears to have been unfortunate for Bradley, however, because the Synergy Realty Group, Ltd. ("Synergy"), not Grubb & Ellis, arranged the sale of the building to the Art Institute of Chicago. After the sale, Bradley refused to pay a commission to Grubb & Ellis, reasoning that Grubb & Ellis played no role in the sale and therefore was not entitled to a commission. Grubb & Ellis protested and filed suit (pursuant to our diversity jurisdiction) in federal court, claiming that Bradley had reneged on its promise to pay a commission if the building was sold during the agency's term, without regard to Grubb & Ellis's role in the sale. The district court agreed with Grubb & Ellis and we affirm.

## I.

In April 1987, Grubb & Ellis and Bradley exchanged a series of letters discussing Grubb & Ellis's offer to become Bradley's agent for the sale of the Champlain building in downtown Chicago. The agency agreement adopted by the parties consists of two letters: one, from Grubb & Ellis to Bradley, is dated April 9, 1987, and the other, from Bradley to Grubb & Ellis, is dated April 28, 1987. The April 9 letter provides, in pertinent part:

Grubb & Ellis (G & E) will enter into a sale agency agreement with Bradley Real Estate Trust (Owner) under the following conditions:

Term: Six (6) Months (unless mutually extended) commencing April 15, 1987.

Sale Exclusions: Any active deals (the attached 34 contacts as submitted in your letter dated 3/30/87) which are currently in serious, on-going negotiations with Synergy Realty Group, Ltd. and Owner shall be excluded from this agreement for a period of (60) sixty days.

Leasing Commissions: If Grubb & Ellis is the procuring cause for bringing a qualified prospective tenant to the Champlain Building, the Owner agrees to pay Grubb & Ellis a full commission. . . .

Building Sale: The Building will be listed for 6.75 million dollars. In the event of a sale, the commission is the total of 6% of the first $300,000.00 of the selling price and 5% of the selling price in excess of $300,000.00. If an outside broker is involved in the sale transaction, the commission will be divided equally between Grubb & Ellis and the outside broker.

Letter from Richard W. Herbert, Assistant Vice President of Grubb & Ellis, to E. Lawrence Miller, President of Bradley at 1–2 (Apr. 9, 1987) ("Grubb & Ellis Letter") (reprinted in Appellant's Brief at Appendix Tab G).

Miller countersigned this letter, stating that Bradley accepted Grubb & Ellis's proposed sales agency agreement, and, on April 28, returned it with his own letter proposing additional terms to the agreement. Of these additional terms, only one is relevant for our purposes:

Commission on sales will be paid to Grubb & Ellis only upon consummation of a sale for which a contract has been entered into (a) during the term of the agency or (b) within ninety (90) days after expiration of the term provided that the prospect has been identified in writing by Grubb & Ellis prior to the expiration of the term.

Letter from Miller to Herbert at 1 (Apr. 28, 1987) ("Bradley Letter") (reprinted in Appellant's Brief at Appendix Tab H). Grubb & Ellis countersigned this letter and returned it on May 1.

Grubb & Ellis began marketing the Champlain building in April, but admittedly played no role in its eventual sale. The Synergy Realty Group, which had served as Bradley's real estate broker prior to the appointment of Grubb & Ellis and also had managed the building, negotiated Bradley's sale of the building to the Art Institute of Chicago. Robert Mars, the Art Institute's Vice President of Administrative Affairs (who was personally responsible for the decision to acquire the building), contacted Synergy in mid-May 1987, but did not con-

tact Bradley until August 1987. The Art Institute and Bradley signed a contract for purchase of the building on September 8 and 9, 1987, and closed on the contract on October 30, 1987. The final sale price of the building was $5,425,000.

After the sale, Grubb & Ellis demanded its commission pursuant to the terms of the agreement. When Bradley refused to pay, Grubb & Ellis sued for the commission. District Judge Norgle determined that the agreement required payment of the commission and therefore granted Grubb & Ellis's motion for summary judgment. Bradley now appeals.

## II.

Despite all the distractions, this, for the most part, is a straightforward case of contract construction. Grubb & Ellis argues that it is entitled to a commission under the agency agreement (consisting of the Grubb & Ellis Letter and the Bradley Letter), while Bradley responds that the agreement is ambiguous and that, since Grubb & Ellis was not the "procuring cause" of the sale, the agreement does not entitle it to a commission. The district court concluded that Grubb & Ellis is entitled to a commission and therefore granted its motion for summary judgment. Bradley mounts a number of attacks upon the district court's ruling; we consider each in turn.

### A. Does the Agreement Have a Fixed Date of Termination?

■ Bradley's first challenge is to the form of the agency agreement itself: the agreement is void, Bradley argues, because it does not contain an automatic date of termination as required by Illinois law. Specifically, section 19 of the Illinois Real Estate License Act of 1983, Ill.Rev.Stat. ch. 111, ¶ 5819 (Smith–Hurd 1990), provides that "[n]o licensee shall obtain any written listing contract which does not provide for automatic expiration within a definite period of time. No notice of termination at the final expiration thereof shall be required. Any listing contract not containing a provision for automatic expiration shall be

void." Bradley contends that this paragraph renders the agency agreement (and hence its obligation to pay a commission) void because the agency agreement does not automatically expire within a definite period of time. The agreement provides that the term of the agency would be "Six (6) Months (unless mutually extended) commencing April 15, 1987."

To be blunt, it is hard to understand Bradley's argument that the agreement does not provide for automatic termination within a fixed period of time. Grubb & Ellis was to serve as Bradley's agent for six months from April 15, 1987, the commencement date of the agreement. The term of the agreement may be extended, of course, but only by mutual affirmative action; the agreement still contains a provision for its automatic expiration at the end of the six month term. This factor distinguishes this case from *Grayway Real Estate Corp. v. Dickey*, 178 Ill.App.3d 477, 127 Ill.Dec. 482, 533 N.E.2d 100 (1st Dist. 1988), in which an Illinois appellate court concluded that an agency agreement with an *automatic extension* violated the Real Estate License Act of 1983. Since that agreement provided for automatic extension—instead of automatic expiration, as required by the Act—at the end of an initial ninety day term, the court held that the agreement was void. In comparison, Grubb & Ellis's agreement contains a provision for automatic expiration of the agency relationship after six months from April 15. This arrangement includes both automatic termination and a definite period of time, and therefore satisfies section 19 of the Act. *Cf. Bisluk v. Town Realty, Inc.*, 90 Ill.App.3d 1039, 46 Ill.Dec. 429, 414 N.E.2d 151 (1st Dist.1980) (predecessor Act required specific termination date and fixed time to protect seller); *Edens View Realty & Inv., Inc. v. Heritage Enters., Inc.*, 87 Ill.App.3d 480, 42 Ill.Dec. 360, 408 N.E.2d 1069 (1st Dist.1980) (same).

Despite this analysis, Bradley still claims that the agency agreement violates the statute because it does not remain effective for a definite period of time. Bradley contends that the duration of the agreement is

indefinite because the six month agency relationship, as defined by the terms of the agreement, was to begin on April 15, thirteen days *before* Bradley signed the letter giving effect to the agreement. Since it is unclear whether the six month period was to begin on April 15 or April 28, Bradley urges, the term of the agreement is indefinite and therefore violates the Act.

Although there is little recent law on the subject, Illinois courts have, in the past, permitted the "relation back" theory of contract effectiveness: that is, contractual terms may be effective for a period *before* the contract is executed, so long as such coverage is clear from the face of the contract:

> In the law of contracts, it is elementary that ordinarily a contract speaks from the day of its date, regardless of when it was executed and delivered. It is of common occurrence in connection with deeds, leases and other contracts that, while they are not in effect at all and have no legal existence until delivered, yet, in respect to the date of delivery, they, in point of commencement, relate back or commence in the future. Such relation back or forward contravenes no principle of law and is determined by the intent of the parties as deduced from the instrument itself.

*Monahan v. Fidelity Mutual Life Ins. Co.*, 148 Ill.App. 171, 174 (1st Dist.), *aff'd*, 242 Ill. 488, 90 N.E. 213 (1909). *See also American Cyanamid Co. v. Ring*, 248 Ga. 673, 675, 286 S.E.2d 1, 3 (1982) ("[T]he effective date of a contract is not the date of execution where the contract expressly states that its terms are to take effect at an earlier date."); *Goldstein v. Ipswich Hosiery Co.*, 104 Ga.App. 500, 506, 122 S.E.2d 339, 345 (1961) ("It is elemental that contracting parties may agree to give retroactive effect ... to their contracts as they see fit."); *Matthews v. Jeremiah Burns, Inc.*, 205 Misc. 1006, 1013, 129 N.Y. S.2d 841, 847 (1954) ("It is fundamental that where parties to an agreement expressly provide that a written contract be entered into 'as of' an earlier date than that on which it was executed, the agreement is effective retroactively 'as of' the earlier

date and the parties are bound thereby...."). *Cf. Mutual Life Ins. Co. v. Hurni Packing Co.*, 263 U.S. 167, 175–76, 44 S.Ct. 90, 91, 68 L.Ed. 235 (1923) ("It was competent for the parties to agree that the effective date of the policy should be one prior to its actual execution or issue....").

On April 28, Bradley agreed with Grubb & Ellis that the term of the agency agreement would last for "Six (6) Months (unless mutually extended) commencing April 15, 1987." The language of this provision is clear and is not "reasonably capable of interpretation in more than one way." *Thompson v. Amoco Oil Co.*, 903 F.2d 1118, 1120 (7th Cir.1990) (quoting *UIDC Management, Inc. v. Sears Roebuck & Co.*, 141 Ill.App.3d 227, 230, 95 Ill.Dec. 691, 693, 490 N.E.2d 164, 166 (1st Dist.1986)). Since the agreement is clear on its face, we need not consult parol evidence to determine its meaning. *LaSalle Nat'l Bank v. Service Merchandise Co.*, 827 F.2d 74, 78 (7th Cir.1987); *Sunstream Jet Express, Inc. v. International Air Serv. Co.*, 734 F.2d 1258, 1267 (7th Cir.1984) (both citing Illinois cases). The term of the agency agreement extended six months from April 15 and therefore clearly satisfies section 19 of the Illinois Real Estate License Act.

## B. Was Grubb & Ellis Responsible for the Sale of the Champlain Building? Does This Matter?

The district court found that the terms of the agreement between Bradley and Grubb & Ellis entitled Grubb & Ellis to a commission on any contract executed during the term of the agency, without regard to Grubb & Ellis's role in procuring the sale. Order at 9 (N.D.Ill. Aug. 11, 1989). Those terms provide for commissions to be paid for sales made within the six month agency arrangement: specifically,

> Commission on sales will be paid to Grubb & Ellis only upon consummation of a sale for which a contract has been entered into (a) during the term of the agency or (b) within ninety (90) days after expiration of the term provided that the prospect has been identified in writ-

ing by Grubb & Ellis prior to the expiration of the term. Bradley Letter at 1. Further, the agreement states that "[i]f Grubb & Ellis is the procuring cause for bringing a qualified prospective tenant to the Champlain Building, the Owner agrees to pay Grubb & Ellis a full commission." Grubb & Ellis Letter at 1. Curiously, the agreement also mentions that "[i]f an outside broker is involved in the sale transaction, the commission will be divided equally between Grubb & Ellis and the outside broker." *Id.* at 2. Since the Art Institute contracted to purchase the building in early September, the district court concluded that the clear terms of the agency agreement entitled Grubb & Ellis to a one-half share of the commission, without regard to Grubb & Ellis's role in the sale.

■ We review *de novo* a trial court's legal determination that contractual terms are unambiguous. *Air Line Stewards and Stewardesses Assoc. v. American Airlines, Inc.*, 763 F.2d 875, 878 (7th Cir.1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986); *see National Tea Co. v. American Nat'l Bank & Trust Co.*, 100 Ill.App.3d 1046, 1049, 56 Ill.Dec. 474, 476, 427 N.E.2d 806, 808 (1st Dist.1981) (ambiguity of contract term is question of law). *Cf. Puckett v. Soo Line R.R.*, 897 F.2d 1423, 1425 (7th Cir.1990) (grant of summary judgment reviewed *de novo*). In this light, we follow the applicable Illinois rules of contract construction in determining the meaning of the agency agreement. *See Hajeck v. Wyrick*, 124 Ill.App.3d 210, 215–16, 79 Ill.Dec. 573, 577, 463 N.E.2d 1348, 1352 (2d Dist.1984) (interpretation of agency agreement governed by contract law); *Arthur Rubloff & Co. v. Drovers Nat'l Bank*, 80 Ill.App.3d 867, 871, 36 Ill.Dec. 194, 197–98, 400 N.E.2d 614, 617–18 (1st Dist.1980). As we summarized in *LaSalle National Bank v. Service Merchandise Co.*, "[t]he starting point must be the contract itself. If the language of the contract unambiguously provides an answer to the question at hand, the inquiry is over." 827 F.2d at 78. If the contract is ambiguous, however, the trier of fact may consider the language of the contract as well as

extrinsic and parol evidence presented by the parties. *Id.* Again, as we wrote in *Thompson*, "[a] contract is ambiguous when its terms are reasonably capable of interpretation in more than one way." 903 F.2d at 1120 (quoting *UIDC Management, Inc. v. Sears Roebuck & Co.*, 141 Ill.App.3d 227, 230, 95 Ill.Dec. 691, 693, 490 N.E.2d 164, 166 (1st Dist.1986)).

■ We believe we have to go no further than the clear language of the agreement to determine Grubb & Ellis's right to receive a commission. That language unambiguously provides for payment of a commission to Grubb & Ellis upon the sale of the building, without regard to Grubb & Ellis's role in the sale. *See* Bradley Letter at 1 ("Commission on sales will be paid to Grubb & Ellis only upon consummation of a sale for which a contract has been entered into (a) during the term of the agency...."). There is no question that Bradley and the Art Institute entered into a contract for the sale of the building in early September 1987, during the term of the agency.

Indeed, the only pertinent issue regarding Grubb & Ellis's role in the sale relates to the *amount* of the commission owed to Grubb & Ellis: the agreement provides for a commission of between five and six percent of the sale price (depending upon the price), but then adds that "[i]f an outside broker is involved in the sale transaction, the commission will be divided equally between Grubb & Ellis and the outside broker." Grubb & Ellis Letter at 2. The agency agreement's express provision of a half commission to Grubb & Ellis when another broker is involved in the sale—in contrast to its earlier provision of a full commission if Grubb & Ellis is the "procuring cause" of the sale—undermines Bradley's contention that Grubb & Ellis must be the procuring cause of *any* sale in order to receive a commission.

■ Further, when an agency agreement expressly provides for the payment of a commission upon sale without regard to the agent's role in the transaction, the agent's failure to procure the sale is irrelevant.

Bradley makes much of the fact that Grubb & Ellis played virtually no role in the sale of the building to the Art Institute and cites a number of cases suggesting that a real estate broker must be responsible for the sale in order to collect a commission. *See, e.g., Lord v. Melton*, 80 Ill. App.3d 1057, 1061, 36 Ill.Dec. 127, 130, 400 N.E.2d 547, 550 (3d Dist.1980); *Camp v. Hollis*, 332 Ill.App. 60, 66, 74 N.E.2d 31, 34 (1st Dist.1947). But this circuit has already upheld a decision under Illinois law enforcing the terms of a sales agreement that specifically provided for the payment of a commission, without regard to responsibility. *Bass v. Banga*, 656 F.Supp. 312, 314 (N.D.Ill.1987), *aff'd*, 857 F.2d 1476 (7th Cir.1988). There, the district court—considering the same argument Bradley advances today—reasoned that *Camp v. Hollis* and other Illinois cases requiring an agent to procure a sale are inapplicable if the agreement unambiguously provides for a commission under any circumstances:

> One of the principles which courts created to avoid the harshness of the rule denying a broker a commission when he had brought the parties together but the actual sale fell outside the literal terms of his contract was to award a commission, regardless of unfulfilled conditions, if the broker was the "procuring cause" of the sale.... *That principle, however, obviously has no relevance when the sale does fall within the literal terms of the broker's contract, and Illinois courts enforce the terms of the contract regardless of whether the broker's acts procured the sale or not.* Hammel v. Ruby, 139 Ill.App.3d 241, 244, 487 N.E.2d 409, 412, 93 Ill.Dec. 742, 745 (5th Dist.1985); *Bolger v. Danley Lumber Co.*, 77 Ill.App.3d 207, 210, 395 N.E.2d 1066, 1069, 32 Ill.Dec. 685, 688 (1st Dist.1979).

*Bass v. Banga*, 656 F.Supp. at 314 (emphasis supplied). Since there is little question that the plain terms of the agreement include this sale, Grubb & Ellis is entitled to its commission.

▮ In a last-ditch effort to convince us that the agency agreement does not mean what it says, Bradley observes that Miller told Herbert that Bradley "didn't as a policy matter give exclusive agency agreements to anybody," Deposition of Miller at 37 (Oct. 4, 1988) (reprinted in Supplemental Joint Appendix at Tab 7) and that he wrote to Herbert (before the parties signed the agency agreement) that Bradley would be unable "to give you [Grubb & Ellis] an exclusive [agency agreement]...." Letter from Miller to Herbert at 1 (Mar. 30, 1987) (reprinted in Supplemental Joint Appendix at Tab 12). As a preliminary matter, whether we characterize the agency agreement as "exclusive" makes little difference here: the terms of the agency agreement clearly establish Grubb & Ellis's entitlement to a commission. *See Vanguard Telecommunications, Inc. v. Southern New England Tel. Co.*, 900 F.2d 645, 651 (3d Cir.1990) ("We do not require any 'magic words' to establish the right to commission regardless of responsibility; we merely require some operative words to that effect."). In any event, since we have determined that the terms of the agency agreement are clear, Miller's statements—which constitute parol evidence—are simply irrelevant to our inquiry. *Hammel v. Ruby*, 139 Ill.App.3d at 247, 93 Ill.Dec. at 746, 487 N.E.2d at 413 ("[W]hen contract terms are clear and unambiguous, they must be given their ordinary and natural meaning, and no parol evidence may be considered to vary the meaning of the terms."). Even if this evidence were relevant, however, Miller's recollections of his intent and of Bradley's policies cannot overcome the plain language of the agreement he eventually signed. *National Acceptance Co. of Am. v. Wechsler*, 489 F.Supp. 642, 647 n. 6 (N.D.Ill.1980). And, incidentally, these recollections relate only to Miller's March 30 Letter—not a part of the agency agreement—which Grubb & Ellis never signed.

### C. Was the Sale of the Building to the Art Institute Excluded by the Agreement?

▮ Even if the agreement provides for a commission, Bradley may avoid payment if it can prove that specific provisions of the agreement exclude Synergy's sale of the building to the Art Institute. The

agreement does contain a Sale Exclusion clause, which provides:

> Any active deals (the attached 34 contacts as submitted in your letter dated 3/30/87) which are currently in serious, on-going negotiations with Synergy Realty Group, Ltd. and Owner shall be excluded from this agreement for a period of (60) sixty days.

Grubb & Ellis Letter at 1.

In construing this provision, again, we need go no further than its plain language. The clause does not apply to this case because the Art Institute and Bradley did not contract to sell the Champlain building until September 1987, well after the sixty day period had expired. Bradley's construction of this provision—that any of Synergy's deals commenced within the sixty day period would be excluded, no matter when the contract was eventually signed—does violence to the term "currently." As the district court recognized, "the clear language of the provision states that any active deal that was *currently* in progress was protected for 60 days." Order at 8 (emphasis in original); *see Thompson*, 903 F.2d at 1121 (disfavoring interpretations that render contractual terms "mere surplusage"). Further, Bradley fails to acknowledge that the "sixty days" refers to the period of exclusion, not to the duration of negotiations. Bradley's sale of the Champlain building in September 1987, therefore, is not excluded by the terms of the clause.

### III.

It is not our function to reform the plain language of an agency agreement to the obvious advantage of one party and to the obvious detriment of another. It is possible, of course, that Bradley wanted to pay Grubb & Ellis only if Grubb & Ellis procured the sale of the Champlain building during the term of the agency agreement. But if this was Bradley's objective, it should have said so in the agreement. It is too late for it to say so now.

AFFIRMED.