LAZARD FRÈRES & CO., Plaintiff,

v.

CROWN STERLING MANAGEMENT,
INC., Defendant.

No. 95 Civ. 2856 (MGC).

United States District Court,
S.D. New York.

Oct. 2, 1995.

Wachtell, Lipton, Rosen & Katz by Marc Wolinsky, Michael Schwartz, Rachelle Silverberg, New York City, for Plaintiff.

Bickel & Brewer by William A. Brewer, III, Michael J. Collins, New York City, for Defendant.

### OPINION

CEDARBAUM, District Judge.

Crown Sterling Management, Inc. ("Crown"), a Texas corporation with its principal place of business in California which owns, manages, licenses, and franchises hotel chains, entered into an agreement (the "Agreement") with Lazard Frères & Co. ("Lazard"), a partnership with no partners residing in either Texas or California. Pursuant to the Agreement, Lazard was to serve as "exclusive investment banker and financial advisor" to Crown and its affiliates ("the Client") and assist in the restructuring of their debts. The Agreement specifically provided that Lazard would be entitled to its fees if the Client successfully restructured their debts, even if Lazard was not responsible for the debt restructuring. The Client did restructure a portion of their debts, but refused to pay Lazard its fees. This suit followed. Crown has asserted counterclaims of breach of contract, breach of fiduciary duty, breach of the duties of good faith and fair dealing, negligence and gross negligence, fraud, and negligent misrepresentation.

Lazard moves for judgment on the pleadings to recover its fees. At oral argument, pursuant to Fed.R.Civ.P. 12(c), I converted the motion into one for summary judgment, and gave the parties an opportunity to submit any pertinent material outside the pleadings. (Tr. of Proc. Aug. 4, 1995 at 8–9.) Plaintiff also moves pursuant to Fed.R.Civ.P. 54(b) for entry of a final judgment on its claim. Plaintiff is entitled to payment under the Agreement, and because there is no just reason for delay of the entry of a judgment in its favor, the motion is granted.

### Background

The terms of the relationship between Lazard and Crown were detailed in an Engagement Letter. (Letter from Lazard to Charles M. Sweeney, dated July 30, 1993, Compl., Ex. A.) The Agreement provided that Lazard was to conduct "due diligence" of the Client, analyze options for financial restructuring, prepare marketing materials, identify prospective investors and financing sources, provide written reports about prospective investors, raise capital, and provide ongoing reports and advice regarding the debt restructuring. (*Id.* ¶ 1.) The Agreement provided that it applied to "the various entities comprising the Crown Sterling Suites hotel chain" and that "all references to the Company shall be interpreted broadly to refer to any or all such entities, as may be applicable." (*Id.* at 1.) After setting out Lazard's fee structure (*id.* ¶ 3), the Agreement provided that:

[w]hile this Agreement is in effect, [Lazard] shall be entitled to receive such fees as are described and contemplated in Paragraph 3, above, in the event that any of the events described or contemplated in Paragraph 3 occurs, *regardless of whether [Lazard] is responsible for arranging said events.* If, while this Agreement is in effect, Client undertakes one or more transactions leading to the occurrence of such events, which transaction(s) [Lazard] did not arrange, then *[Lazard's] fees shall be determined as if [Lazard] had actually arranged* said transaction(s),

(*id.* at ¶ 4) (emphasis added). The Agreement was to remain in effect until thirty days after delivery by either party of a notice of termination, "which notice may not be delivered prior to one year from Client's acceptance." (*Id.*)

It is not disputed that the Client entered into four refinancing transactions after the parties entered into the Agreement. In February 1994, the Client obtained $22 million in

new mortgage financing from Heller Financial, Inc., and a new $16.5 million mortgage loan from the Bank of Nova Scotia. (Compl. ¶¶ 11, 12; Answer ¶¶ 11, 12.) The Client also restructured a $22,761,272.87 mortgage loan from Mellon Bank, N.A. and a $23,893,188.61 mortgage loan from Barnett Bank of Broward County, N.A. (Compl. ¶¶ 13, 14; Answer ¶¶ 13, 14.) Finally, the Client refinanced an existing $86.2 million in mortgage loans from the Bank of Nova Scotia, extending the maturity of those loans by more than three years. (Compl. ¶ 12; Answer ¶ 12.)

On April 22, 1994, Crown sent a "disengagement" letter to Lazard. (*See* Letter from Robert E. Woolley to Peter Cyrus, Rosenbaum Aff. dated Aug. 9, 1995, Ex. C.) In it, Crown stated that "while some progress toward our mutual goals, as expressed in our discussions and the Letters of Engagement, have [sic] been made, we feel that our overall purposes have been, for whatever reason, unfulfilled." (*Id.* at 1.) On May 19, 1994, Lazard sent an invoice to Crown, seeking its fees for the four transactions in the amount of $1,741,970, plus out-of-pocket disbursements, (Agreement at ¶ 5), attorney's fees, (*id.* at ¶ 9), and statutory prejudgment interest. N.Y.Civ.Prac.L. & R. § 5004 (McKinney 1992).

### Discussion

### I. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party opposing a properly supported summary judgment motion must establish a genuine issue of material fact in order to preclude summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). In deciding whether a genuine issue exists, the court must "examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences

against the moving party." *In re Chateaugay Corp.*, 10 F.3d 944, 957 (2d Cir.1993).

Two conditions are necessary for Lazard to recover its fees for the February 1994 debt restructuring—(1) the Agreement must have been in effect in February 1994; and (2) the debt restructuring must have been an "event" within the meaning of the Agreement. It is undisputed that the second condition is satisfied.

### A. Was the Agreement in effect in February 1994?

■■■ The Agreement provided that it was to remain in effect until "thirty (30) days after the delivery by either party to the other of a written notice of termination." (Agreement ¶ 4.) Assuming that Crown validly terminated the Agreement (the Agreement provided that neither side could terminate prior to one year), *cf. Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 518 (2d Cir.1989) (under New York law, failure to comply with contractual notice of termination provision is ineffective to terminate contract), its letter was dated April 22, 1994. Nevertheless, defendant alleges that plaintiff breached the contract by its "utter failure to perform." (Answer, counterclaims ¶ 21.) In essence, defendant contends that plaintiff's prior material breach relieves it of all of its obligations under the Agreement, including the obligation to pay Lazard's fees. *See Septembertide Publishing, B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 678 (2d Cir.1989) (rescission of contract appropriate under New York law where breach is "material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract") (*quoting Callanan v. Powers*, 199 N.Y. 268, 284, 92 N.E. 747 (1910)).

Plaintiff has provided both direct and circumstantial evidence that it performed some of its obligations under the Agreement. Two affidavits by David Rosenbaum, a Lazard associate who worked on the Crown engagement, along with travel logs and other documents, show numerous meetings between representatives of Lazard and the Client and existing and prospective lenders to and in-

vestors in the Client. These include meetings with representatives of Barnett Bank, Bank of Nova Scotia, Mellon, and Heller Financial—the banks involved in the February 1994 debt restructuring. (*See* Rosenbaum Aff. dated August 9, 1995, Ex. B; Rosenbaum Aff. dated August 25, 1995, Ex. A.) Lazard also points to the "disengagement" letter written by defendant, in which Crown acknowledged that Lazard had partially performed. In the letter, Crown stated that Lazard provided "limited assistance and advice with reference to refinancing or restructuring the mortgage indebtedness," (Letter from Robert E. Woolley to Peter Cyrus, Rosenbaum Aff. dated Aug. 9, 1995, Ex. C. at 2), and "some assistance in negotiations with prospective lenders and investors," (*id.* at 3).

In opposition, defendant presents affidavits by Charles M. Sweeney, the President of Crown, and Jack Roberts, its Vice–President and Secretary. In identical language, they assert that "Lazard did not undertake any of the tasks or activities required in the Engagement Letter during 1993," including conducting a due diligence evaluation, preparing a report evaluating the Client's value and prospects, advising the Client with respect to restructuring or repurchasing limited partnership interests, contacting prospective investors or purchasers of the Client, assisting the Client in using public offerings, or providing periodic reports. (*See* Sweeney Aff., ¶ 15; Roberts Aff., ¶ 10.)

Neither affiant states that he or any other representative of Crown considered Lazard in default as of February 1994, nor does Crown indicate that it communicated to Lazard its dissatisfaction prior to the "disengagement" letter of April 1994. This omission is significant, since under New York law (which the Agreement provided shall apply, *see* ¶ 13), "the power to terminate a continuing contract because of a particular breach of that contract is a power of election." *Apex Pool Equip. Corp. v. Lee,* 419 F.2d 556, 562 (2d Cir.1969). The non-breaching party may choose to continue to perform the contract or may refuse to continue. *Id.* If the non-breaching party elects the first option, it may not later renounce its election to continue

and seek to terminate based on the prior breach. *See V.S. Int'l S.A. v. Boyden World Corp.,* 862 F.Supp. 1188, 1196 (S.D.N.Y.1994). Crown's failure to present any evidence that it notified Lazard that it considered Lazard to have breached the Agreement as of February 1994 shows that even if Crown's allegations of an "utter failure of performance" were true, Crown had elected to continue with the Agreement. *Cf. ARP Films, Inc. v. Marvel Entertainment Group, Inc.,* 952 F.2d 643, 649 (2d Cir.1991) ("[Plaintiff's] decision to continue receiving benefits pursuant to the ... Agreement was tantamount to an election to affirm the contract.").

In addition, under New York law, whether a contract is divisible is a question of intent, determined from the language of the contract and the circumstances under which the contract was made. *Rudman v. Cowles Communications, Inc.,* 30 N.Y.2d 1, 13, 330 N.Y.S.2d 33, 42, 280 N.E.2d 867, 872 (1972). A contract is divisible where "(1) the parties' performances can be apportioned into corresponding pairs of partial performances, and (2) the parts of each pair can be treated as agreed equivalents." *Ginett v. Computer Task Group, Inc.,* 962 F.2d 1085, 1098 (2d Cir.1992) (*citing* Restatement (Second) of Contracts, § 240 (1981)). The Agreement specifically provided that Lazard's payment would be apportioned according to various tasks, and was payable upon Lazard's performance of these tasks. (Agreement ¶ 3(A)–(F).) Under these circumstances, the portion of the Agreement pertaining to the debt restructuring was severable from the other parts of the Agreement. *See Kosinski v. Woodside Constr. Corp.,* 77 A.D.2d 674, 675, 429 N.Y.S.2d 783, 785 (3d Dep't 1980) (contract is divisible when price is apportioned among different items) (citation omitted). Defendant does not offer any evidence to rebut plaintiff's showing that it actually played a role in the February 1994 debt restructuring. Defendant's conclusory denials do not create a genuine issue of material fact as to whether as of February 1994, at least the debt restructuring portion of the Agreement was in effect. *See* Fed.R.Civ.P. 56(e) ("adverse party's response [to properly supported summary judgment motion] ...

must set forth specific facts showing that there is a genuine issue for trial").

Seeking to avoid this result, defendant moves to strike the Rosenbaum affidavits and the attached exhibits on various evidentiary grounds. This motion is meritless. Affidavits submitted in support of a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to the matters stated therein." Fed.R.Civ.P. 56(e). In response to defendant's motion, plaintiff submitted a second affidavit by Rosenbaum which specifically affirmed that it was based upon personal knowledge. (Rosenbaum Aff. dated Aug. 24, 1995 at ¶ 2.) In addition, the underlying business records are annexed to the second Rosenbaum affidavit. *See* Fed.R.Evid. 803(6). The disengagement letter is evidence of Crown's attempt to terminate the contract and is also the admission of a party-opponent. *See* Fed.R.Evid. 801(d)(2)(D).

■ In an effort to delay judgment, defendant requests additional discovery. Under Fed.R.Civ.P. 56(f), the opponent of a motion for summary judgment who seeks discovery must file an affidavit explaining

> (1) the information sought and how it is to be obtained; (2) how a genuine issue of material fact will be raised by that information; (3) what efforts the affiant has made to obtain the information; and (4) why those efforts were unsuccessful. Additionally, the discovery sought must be material to the opposition of the summary judgment motion.

*Sage Realty Corp. v. Insurance Co. of North America,* 34 F.3d 124, 128 (2d Cir.1994) (*citing Hudson River Sloop Clearwater, Inc. v. Department of the Navy,* 891 F.2d 414, 422 (2d Cir.1989)). Defendant seeks discovery of "any evidence of misrepresentations made and fraud committed by Lazard," and discovery of "the nature and extent of Lazard's alleged performance of the duties and obligations set forth in the Engagement Letter." (Rule 56(f) Aff. of Michael J. Collins, Esq. at ¶¶ 5, 8.) Defendant "intends to depose Peter Cyrus, a former employee of Lazard, and David E. Rosenbaum." (*Id.* at ¶ 8.)

This showing is insufficient under Rule 56(f). Any misrepresentations made to defendant are matters within its own knowledge, and defendant's allegations of fraud—including those contained in its amended answer and counterclaims—lack the specificity required by Rule 9(b). With respect to the request for discovery concerning plaintiff's performance, the affidavit does not identify any specific facts in plaintiff's possession—it simply seeks discovery regarding the "nature and extent" of Lazard's performance. In light of plaintiff's showing that it played a role in effecting the successful debt restructuring, such a vague and formulaic recital is insufficient under Rule 56(f).

### B. *Plaintiff's entitlement to the fees under the Agreement*

■ Summary judgment in contract disputes is proper "if the language of the contract is wholly unambiguous." *Mellon Bank, N.A. v. United Bank Corp.,* 31 F.3d 113, 115 (2d Cir.1994) (citation and internal quotation marks omitted). The Agreement specifically provided that Lazard would be entitled to its fees upon the occurrence of certain events, "regardless of whether [Lazard] is responsible for arranging said events." (Agreement ¶ 4.) It reiterated that even if Lazard did not arrange the transactions in question, its fees "shall be determined as if [Lazard] had actually arranged said transactions." (*Id.*)

Such clauses are common. For instance, in *PaineWebber Inc. v. Campeau Corp.,* 670 F.Supp. 100 (S.D.N.Y.1987), an agreement for the services of an investment bank that provided that "[i]f within the next 12 months, an Acquisition [by Campeau Corp.] shall be consummated, PaineWebber will receive a fee of $5,750,000 ... upon consummation of such Acquisition" was held to entitle PaineWebber to payment even though it had not been directly involved in the acquisition. *Id.* at 102. Similarly, *Grubb & Ellis Co. v. Bradley Real Estate Trust,* 909 F.2d 1050 (7th Cir.1990), upheld an award of a broker's commission, holding that "when an agency agreement expressly provides for the payment of a commission upon sale without regard to the agent's role in the transaction, the agent's

failure to procure the sale is irrelevant." *Id.* at 1055. In addition, although unnecessary under the Agreement, there is uncontradicted evidence that plaintiff actually played a role in the debt restructuring. Accordingly, Lazard is entitled to summary judgment.

## II. *Fed.R.Civ.P. 54(b)*

■ Fed.R.Civ.P. 54(b) provides in relevant part:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

In *Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 8, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980), the Court stated that "a district court must take into account judicial administrative interests as well as the equities involved" in determining whether entry of such a judgment is appropriate. "Administrative interests" include "whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id.* The Second Circuit has held that "[o]nly those claims 'inherently inseparable' from or 'inextricably interrelated' to each other" are not appropriate for final judgment under Rule 54(b). *Ginett v. Computer Task Group, Inc.,* 962 F.2d 1085, 1096 (2d Cir. 1992). In addition, a "reasoned explanation" must accompany a determination that there is no just reason for delay of a final judgment. *HBE Leasing Corp. v. Frank,* 48 F.3d 623, 631 (2d Cir.1995).

In *Curtiss–Wright,* the Court approved the entry of a judgment under circumstances somewhat similar to this case. In that case, Curtiss–Wright sued General Electric on twenty-one contracts. Curtiss–Wright sought $19 million from General Electric on the outstanding balance due on the contracts already performed. 446 U.S. at 3–4, 100 S.Ct. at 1462–63. General Electric counterclaimed for costs related to its "extraordinary efforts" during the performance of the contracts, and sought to recover $52 million by which Curtiss–Wright had been "unjustly enriched." *Id.* at 4. The only dispute with respect to the $19 million due Curtiss–Wright concerned the interpretation of a contractual release clause. The district court granted summary judgment to Curtiss–Wright on this claim, and directed the entry of judgment on it pursuant to Rule 54(b). The Court of Appeals reversed, holding that the counterclaims, which might result in a setoff, "weigh[ed] heavily" against a grant of judgment pursuant to Rule 54(b). *Id.* at 6, 100 S.Ct. at 1463 (citation omitted). The Supreme Court held that the Court of Appeals erred both in emphasizing the presence of the counterclaims, and in requiring the district court to show that "harsh or unusual circumstances" justified an order under Rule 54(b) in such in a case. *Id.* at 8–10, 100 S.Ct. at 1464–65.

With respect to the administrative interests, Lazard's entitlement to fees is the ultimate disposition of a single claim in the course of an action with more than one claim for relief. There is no genuine issue that (1) the parties were bound by the Agreement as of February 1994, and (2) under the Agreement, the restructuring of the Client's debts triggered Lazard's right to receive fees. As set forth above, defendant has not made a showing that its counterclaims undermine either of these two findings. For this reason, defendant's counterclaims are not "inextricably interrelated" to plaintiff's claim, and no appellate court would have to decide the same issues twice if there were successive appeals. Accordingly, the claim is separable within the meaning of Rule 54(b).

As for the equities, defendant's counterclaims, like its motions to strike the Rosenbaum affidavits and for further discovery, appear to be interposed primarily for the purpose of delaying judgment on Lazard's claim for fees. As *Curtiss–Wright* holds, the possibility of a setoff is not itself a sufficient reason to postpone Lazard's receipt of the benefit of its bargain. *Id.* at 12, 100 S.Ct. at 1466 (availability of setoff is "not an insignifi-

cant factor," but upholding entry of judgment where the plaintiff was financially solvent). Defendant has not explained how it was injured by what plaintiff did or did not do, and neither defendant's *ad damnum* clause nor its affidavits set forth any specific monetary loss. Finally, the Agreement was drafted, negotiated, and agreed to by sophisticated businessmen. The language of the Agreement could not more clearly indicate that Lazard is entitled to its fees. This amount is both "liquidated and large." *Curtiss–Wright,* 446 U.S. at 11, 100 S.Ct. at 1466. Accordingly, after careful consideration, I conclude that there is no just reason for delay of entry of judgment on the complaint.

### Conclusion

Plaintiff's motion for summary judgment is granted and judgment shall be entered for plaintiff and against defendant in the amount of $1,741,970.22, plus prejudgment interest at 9% per annum from May 19, 1994, together with reasonable disbursements and attorney's fees. Settle judgment on three days notice with supporting documentation of attorney's fees.

SO ORDERED.