**INSIGNIA/FRAIN CAMINS & SWARTCHILD, Plaintiff,**

v.

**QUERREY & HARROW, LTD., Defendant.**

**No. 98 C 3976.**

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 22, 1999.

**1052**

David Patterson Gloor, Kathleen M. McCabe, Cassiday, Schade & Gloor, Chicago, IL, for Insignia/Frain Camins & Swartchild, plaintiff.

Dennis Andrew Marks, Querrey & Harrow, Ltd., Chicago, IL, for Querrey & Harrow, defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Insignia/Frain Camins & Swartchild ("Insignia") sues Defendant Querrey & Harrow, Ltd. for a commission allegedly due under an Exclusive Listing Agreement. Querrey & Harrow refused to pay Insignia the commission after Querrey & Harrow negotiated a lease buy-out with its landlord. Currently before the Court is Defendant's motion for summary judgment. Fed. R.Civ.P. 56. Because no genuine issue of material fact exists, Querrey & Harrow's motion for summary judgment is granted.

### RELEVANT FACTS

The following facts are gleaned from the parties' respective Local Rule 12 statements of material facts and accompanying exhibits and affidavits. Querrey & Harrow is a law firm located at Two Prudential Plaza, 180 North Stetson, Chicago, Illinois. Following the departure of a number of attorneys from the firm, Querrey & Harrow decided to re-duce its leased space by one floor—the 37th floor—and began negotiating with its landlord, Prudential Plaza ("Prudential"). Ultimately, Querrey & Harrow entered into an Exclusive Listing Agreement ("ELA") with Insignia, a commercial real estate broker. Although the ELA appointed Insignia the "sole exclusive subleasing agent" for Querrey & Harrow from November 18, 1997 to August 18, 1998, the ELA recognized Querrey & Harrow's ongoing negotiations with Prudential. Specifically, the ELA documented "Insignia/FC & S's understanding that Querrey & Harrow, Ltd. is waiting to receive a buy-out number from the agent of Prudential Plaza," and that if those parties agreed to a lease buy-out before January 1, 1997 and executed that agreement, Insignia would not be entitled to a commission. In addition, Insignia's compensation for relieving Querrey & Harrow of the space depended upon the nature of the transfer; the ELA provided one compensation scheme in the event of a sublease or assignment, and another if Insignia was successful in negotiating a lease buyout, cancellation, recapture, or renegotiation.

Thomas C. Kaufmann, a Querrey & Harrow attorney, was primarily responsible for Querrey & Harrow's negotiations with Prudential. On December 30, 1997, Kaufmann delivered a "Second Amendment of Lease" to Steven E. Smith, General Manager of Cushman & Wakefield, Prudential's agent at Two Prudential Plaza. On December 31, 1997, Kaufmann presented Smith with a check in the amount of $500,000, representing the total amount due Prudential under the lease buy-out agreement reached the previous day. However, Smith did not deposit the check until weeks later, claiming that Prudential's common business practice is to refrain from depositing checks until a transaction is formally complete. Both John F. McKinney, a Prudential representative, and Kaufmann submitted affidavits stating that "[a]ll of the substantive provisions of such agreement were agreed to ... on or before December 30, 1997." Querrey & Harrow has not paid Prudential rent for the 37th floor since December 31, 1997.

Despite this progress, on January 9, 1998, McKinney wrote Raphael Dawson of Prudential a memorandum suggesting that the parties had not previously reached an agreement: in the memo, McKinney informs Dawson that Querrey & Harrow has approached him about a space reduction, that the firm is prepared to sublease the 37th floor, that there are sound reasons for Prudential to recapture the space, and then attempts to persuade Dawson of the advantages of accepting the proposed arrangement. McKinney explained at his deposition that the memorandum was merely an after-the-fact attempt to support the agreement. In addition, Querrey & Harrow and Prudential did not formally execute a written contract memorializing the buy-out until sometime after December 31, 1997. Querrey & Harrow and Prudential signed the Partial Termination of Lease ("Termination") no earlier than January 29, 1998, and no later than March 3, 1998. (Kaufmann's Aff. ¶ 10).

Querrey & Harrow subsequently refused Insignia's demand for a commission, claiming that Insignia was not entitled to compensation under the ELA. Specifically, Querrey & Harrow explained that the ELA expressly disavowed a commission because Insignia 1) did not successfully negotiate the lease buy-out; and 2) Querrey & Harrow and Prudential entered into an agreement before January 1, 1998 and then executed that agreement. Insignia filed suit against Querrey & Harrow for brokerage commissions due, claiming that it was entitled to a commission regardless of its level of participation in the buy-out negotiations, and that the "January 1, 1998" exception did not apply because Querrey & Harrow failed to enter into and execute an agreement with Prudential before January 1, 1998.

## LEGAL STANDARDS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Johnson v. University of Wis.–Eau Claire*, 70 F.3d 469, 477 (7th Cir.1995). A genuine issue for trial exists only when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must review all evidence in a light most favorable to the nonmoving party and draw all inferences in the nonmoving party's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. "Where only the construction of a contract is at issue, the legal effect and interpretation of the contract is a question of law, and summary judgment is proper." *Kennedy, Ryan, Monigal & Assocs., Inc. v. Watkins*, 242 Ill.App.3d 289, 182 Ill. Dec. 391, 609 N.E.2d 925, 928 (1993).

## ANALYSIS[1]

The resolution of this suit lies in the Court's interpretation of the relevant provisions of the ELA. In interpreting Querrey & Harrow's obligations under this agreement, "the court must look to the intent of the parties as evidenced by the contract 'as a whole, not merely by reference to particular words or isolated phrases.'" *Watkins*, 182 Ill.Dec. 391, 609 N.E.2d at 928 (quoting *La Throp v. Bell Fed. Sav. & Loan Assoc.*, 68 Ill.2d 375, 12 Ill.Dec. 565, 370 N.E.2d 188, 191 (1977).) When the language in the contract is clear and unambiguous our inquiry ends because we must give effect to contracts as written. *Grubb & Ellis Co. v. Bradley Real Estate Trust*, 909 F.2d 1050, 1055 (7th Cir.1990). If the contract is ambiguous, however, we may consider extrinsic and parol evidence of the parties' intent. *Id.* A contract is ambiguous only if its terms are sub-

---

1. Insignia is a commercial real estate broker incorporated in Delaware and has its principle place of business in South Carolina. This Court has jurisdiction because this is a civil action between citizens of different states and the matter in controversy exceeds the sum value of seventy-five thousand dollars, exclusive of interest and costs. 28 U.S.C. § 1332. As jurisdiction in this case is founded on diversity, we apply state substantive law and federal procedural rules. *Erie R.R. v. Tompkins*, 304 U.S. 64, 77–80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties agree that Illinois substantive law applies and we concur.

ject to two or more reasonable interpretations. *Id.*

Our inquiry is guided by the Seventh Circuit's ruling in *Grubb & Ellis*, which held that, under the terms of its contract with the seller, the broker-plaintiff was entitled to commissions regardless of its role in the sale. In doing so, the Seventh Circuit traced Illinois caselaw on broker compensation, finding that Illinois law had moved away from its previous stance of denying broker compensation if the broker was not the "procuring cause" of the sale. *Id.* The Court explained that "when an agency agreement expressly provides for the payment of a commission upon sale without regard to the agent's role in the transaction, the agent's failure to procure the sale is irrelevant." *Id.; see also Bass v. Banga,* 656 F.Supp. 312, 314 (N.D.Ill.1987) (finding that Illinois cases that conditioned an agent's commission upon its participation in procuring the sale were distinguishable because the Bass agreement "unambiguously" provided for a commission "under any circumstances"). Because the parties' agreement clearly entitled Grubb & Ellis to a commission "in the event of a sale," and without reference to Grubb & Ellis' efforts to procure that sale, the Court affirmed the trial court's award of commissions.[2] *Id.* at 1052, 1056 (noting that whether the agreement was entitled "exclusive" was of no moment; the express terms of the contract controlled).

We now turn to the relevant provisions of the ELA. Paragraph 8A recognizes that if Insignia, Querrey & Harrow, or anyone else *sublets* or *assigns* the referenced space, Insignia will be paid a commission:

A) In the case of a sublease or assignment, the commission shall be seven percent (7%) of the average annual gross rent over the first 12 months . . . , plus 2% of the average annual base rent.

Conversely, under a plain reading of Paragraph 8D, Insignia's compensation in the event of a lease buy-out is conditioned on Insignia's participation, and upon Querrey & Harrow's failure to strike a timely deal with Prudential:

D) In the event Broker is successful in negotiating *a lease buy-out,* cancellation, recapture or a renegotiation of your existing lease, then Sublessor shall pay a fee as defined in Paragraph 8.A above. . . . However, it is Insignia/FC & S's understanding that Querrey & Harrow, Ltd. is waiting to receive a buy-out number from the agent of Prudential Plaza. If Querrey & Harrow should come to an agreement prior to January 1, 1998 and execute a buy-out agreement with the Landlord then Insignia/FC & S would not be entitled to any commission stemming from the buy-out.

Finally, Paragraph 9 of the ELA contemplates the parties' obligations in the event that the ELA expires or is terminated:

In the event of a termination prior to August 17, 1998, Broker shall retain the fee paid as per 8.D for an event that results in Sublessor being relieved of any of their obligation [sic] prior to August 17, 1998.

■ The express language of the ELA provides that Insignia will receive a commission in the event of a sublease or reassignment during the life of the agreement, regardless of Insignia's role in the transaction. In the event of a lease buy-out, however, the ELA clearly requires that Insignia be successful in negotiating such a transfer. There is no other reasonable interpretation of the terms "In the event Broker is successful in negotiating a lease buy-out . . . then Sublessor shall pay a fee." Although the parties do not reveal the importance of distinguishing between the nature of the transfer, it is immaterial for our purposes—it is enough that the ELA's plain language dictates that various types of transfers result in different requirements for a commission.

Insignia concedes that it did not participate in the lease buy-out negotiations, but tries to escape the clear impact of *Grubb & Ellis* by relying upon extrinsic evidence showing that the parties intended for the pre–1998 agreement with Prudential to be the only exception to Insignia's right to receive a commission for a transfer during the

---

**2.** We note that in the event of a lease, payment was due only "if Grubb & Ellis is the procuring

cause for brining a qualified prospective tenant. . . ." *Grubb & Ellis,* 909 F.2d at 1052.

life of the ELA. This evidence is irrelevant: "when contract terms are clear and unambiguous, they must be given their ordinary and natural meaning, and no parol evidence may be considered to vary the meaning of the terms." *Hammel v. Ruby,* 139 Ill.App.3d 241, 93 Ill.Dec. 742, 487 N.E.2d 409, 413 (1985).

Undeterred, Insignia claims that it is entitled to a commission because Querrey & Harrow acted in bad faith by negotiating and executing the deal with Prudential to Insignia's exclusion. Insignia argues that Querrey & Harrow's negotiations with Prudential unfairly prevented Insignia from executing the same deal. We disagree. Insignia knew Querrey & Harrow was engaged in negotiations with Prudential when it signed the ELA and agreed that it was not entitled to a commission should the Prudential lease buy-out occur as described in the contract. Querrey & Harrow's conduct of negotiating with Prudential to Insignia's exclusion could not have been in bad faith because the ELA expressly granted Querrey & Harrow the right to do so.

Insignia next complains that its "showing of the space, abstracting leases, fielding phone calls, preparing brochures, notifying other brokers in the loop of the availability of the space gave Prudential an incentive (or Querrey & Harrow some leverage) to enter into the buy-out." (Pl.Rule 12(N) Statement at ¶ 12). However, these efforts are meaningless in light of Insignia's concession that they did not participate in negotiating the lease.

Insignia alternatively argues that it is entitled to a fee under the general commission clause in Paragraph 9. The last sentence of Paragraph 9 entitles Insignia to "retain" any commission fee paid pursuant to Paragraph 8D "for an event that results in Sub-lessor being relieved of any of their obligation [sic]

prior to August 17, 1998." Because the agreement was terminated before August 17, 1998 due to an event that resulted in Querrey & Harrow being relieved of their lease obligations, Insignia reasons that it is entitled to a commission regardless of the circumstances giving rise to the release.

Initially, we note that Insignia has not received the fee that Paragraph 9 allegedly allows it to retain. (Def. Reply Br. at p. 2). More importantly, accepting Insignia's interpretation of Paragraph 9 directly contradicts Paragraph 8D's limitation on Insignia's entitlement to a commission from a lease buy-out. Namely, Insignia was due a commission only if 1) Insignia successfully negotiated the buy-out, and 2) Querrey & Harrow and Prudential did not reach an agreement prior to January 1, 1998 and/or subsequently execute that agreement. Indeed, Paragraph 9 directs that the fee is paid *pursuant to Paragraph 8;* the only way to read the two Paragraphs consistently is to recognize that Insignia's failure to successfully negotiate the lease buy-back eliminates Insignia's entitlement to a commission under Paragraph 9.

Because Insignia's interpretation of Paragraph 9 would render the more specific provision, Paragraph 8D, meaningless, its argument is without merit. *See Grevas v. United States Fidelity and Guar. Co.,* 152 Ill.2d 407, 178 Ill.Dec. 419, 604 N.E.2d 942, 944 (1992) ("when a contract contains both general and specific provisions relating to the same subject, the specific provision controls"). Therefore, we hold that Insignia is not entitled to a commission for the Prudential lease buy-out and grant summary judgment in favor of Querrey & Harrow.[3]

### CONCLUSION

Under the express terms of the ELA, Insignia was entitled to a commission for a lease buy-out only if it successfully negotiat-

---

3. Having determined that Querrey & Harrow is entitled to summary judgment on this point, we need not address Querrey & Harrow's additional argument that Paragraph 8D prohibits Insignia from collecting a commission because Querrey & Harrow entered into an agreement with Prudential prior to January 1, 1998 and subsequently executed that agreement. We reject, however, Insignia' claim that we should interpret Para-

graph 8D as requiring Querrey & Harrow to both enter an agreement and execute that agreement before January 1, 1998. Such a constrained interpretation is inconsistent with Illinois' prior antecedent rule. *See Business Dev. Serv., Inc. v. Field Container Corp.,* 96 Ill.App.3d 834, 52 Ill.Dec. 405, 422 N.E.2d 86, 90 (1981) ("a qualifying phrase is confined to the last antecedent.").

ed such an agreement. Because the evidence conclusively establishes that Insignia did not participate in the lease buy-out, Insignia is not entitled to a commission. While Insignia attempts to circumvent this result by attacking the clear impact of Paragraph 8D's requirement, we find such attacks to be without merit.

For these reasons, Querrey & Harrow's motion for summary judgment is granted in its entirety. The Clerk of the Court is hereby directed to enter judgment in favor of Defendant, Querrey & Harrow and against Plaintiff, Insignia.